UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————X

MINNIE ROSE LLC,                            :
                                            :
                        Plaintiff,          :
                                            :          **<u>OPINION AND ORDER</u>**
            v.                              :
                                            :          15 Civ. 1923 (ER)
ANNA YU a/k/a "ANNA YUE," ELVA GREEN        :
CLOTHING COMPANY LTD. a/k/a "ELVA           :
GREEN CLOTHING (HK) CO. LTD.," and          :
JOHN DOES 1–10,                             :
                                            :
                        Defendants.         :
————————————————————————X

<u>Ramos, D.J.:</u>

      Minnie Rose LLC ("Plaintiff" or "Minnie Rose"), a New York clothing retailer and

fashion brand, brings suit against Anna Yu ("Yu"), her closely held corporation Elva Green

Clothing Company Ltd. ("Elva Green"), and John Does 1–10 for fraudulent misrepresentation

and unjust enrichment.  Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. §

1332(a).  Before the Court is Yu's and Elva Green's (collectively, "Defendants") motion to

dismiss the Complaint pursuant to Rule 12(b)(2) or, in the alternative, 12(b)(6) of the Federal

Rules of Civil Procedure.  For the reasons set forth below, Defendants' motion is DENIED.

## I. Background[1]

### A.  The Dispute

Plaintiff is a New York corporation that designs, manufactures, and sells women's contemporary clothing.   Compl. ¶ 1.  In 2009, Plaintiff engaged Elva Green's services, through its corporate officer, Yu, to become Plaintiff's primary sourcing agent.  *Id.* ¶¶ 1–2, 12.  In that capacity, Defendants were responsible for selecting factories to manufacture Plaintiff's clothing, supervising production, negotiating prices, and coordinating Plaintiff's payment of the factories' invoices.  *Id.* ¶¶ 2, 13.  In exchange for its services, Plaintiff agreed to pay Defendants a commission equal to 10% of the FOB cost of each item produced and shipped to Plaintiff.  *Id*. ¶ 13.  The agreement between the parties was never reduced to writing.  Defs.' Mem. at 20; Pl.'s Opp'n at 5.  According to Plaintiff, Defendant Elva Green is a single purpose entity that derived its entire revenue from Plaintiff.  Declaration of Lisa Shaller-Goldberg ("Shaller-Goldberg Decl.") ¶ 3.

Plaintiff began using only factories recommended by Defendants, all of which were located in China, to produce its clothing.  Compl. ¶¶ 1–2, 12.  Over the course of the six year relationship, Defendants caused monthly shipments to be made to Plaintiff and billed their

---

[1] As a 12(b)(2) motion is "inherently a matter requiring the resolution of factual issues outside of the pleadings," courts may rely on additional materials extrinsic to the complaint.  *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992).  The following facts, drawn from the Complaint and parties' submissions, are construed in the light most favorable to Plaintiff.  *Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, 00 Civ. 5663 (MBM), 2001 WL 1468168, at *1 (S.D.N.Y. Nov. 19, 2001) (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986); *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995)).

On a motion to dismiss pursuant to Rule 12(b)(6), however, the court relies on and accepts as true the allegations in the Complaint.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  The court may not rely on documents outside the pleadings in deciding a 12(b)(6) motion unless the extrinsic documents are "referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *Silsby v. Icahn*, 17 F. Supp. 3d 348, 254 (S.D.N.Y. 2014) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), *aff'd sub nom. Lucas v. Icahn*, 616 Fed. App'x 448 (2d Cir. 2015) (summary order).  Accordingly, the Court considers additional materials when considering the 12(b)(2) motion but not the 12(b)(6) motion.

services accordingly.  "Shaller-Goldberg Decl." ¶ 3.

Plaintiff alleges that in the Summer of 2014, it learned Defendants had been defrauding Plaintiff throughout the entirety of their business relationship.  Compl. ¶ 3.  Specifically, Plaintiff alleges that Defendants altered the factory invoices to inflate "each and every sum listed," caused Plaintiff to pay the higher amount, and pocketed the difference.  *Id.* ¶¶ 3, 15, 16, 20.  As a consequence of inflating the cost of each item, Defendants also artificially inflated the commission they charged Plaintiff.  *Id*. ¶ 23.  With regards to one factory, the Tonglu Gaili Garment Co. LTD Factory (the "Tonglu Factory"), Plaintiff alleges that Defendants also altered the payment instructions on the invoices to direct Plaintiff to make payments to a bank account controlled by Defendants rather than an account controlled by the Tonglu Factory.  *Id.* ¶ 19.

Plaintiff also alleges that Defendants fraudulently represented that they were required to pay out-of-pocket up-front payments to the Shanghai Dongfang Wool Knitting Co., Ltd Factory (the "Shanghai Factory") for various supplies, for which Defendants then demanded reimbursement.  *Id.* ¶¶ 21–22.  However, according to Plaintiff, Defendants never made any such up-front payments and instead kept the purported reimbursement payments.  *Id.* ¶ 22.

Plaintiff learned of the alleged fraud when it received an "actual invoice" from one of the Chinese factories.  Shaller-Goldberg Decl. ¶ 10.[2]  Shortly thereafter, Plaintiff terminated its relationship with Defendants and filed this action.  *Id*.  Over the course of the relationship, Plaintiff claims to have paid Defendants $1,400,000 in "legitimate commissions," and to have suffered damages in the minimum amount of $2,200,000 as a result of the fraud.  *Id*. ¶ 8; Compl. ¶ 33, 38, 43.

---

[2] Plaintiff includes as Exhibits A and B to the Complaint two of the purportedly fraudulent invoices and the actual invoices it claims the factory issued.  In each case, the purportedly fraudulent invoice is significantly marked up— by approximately $14,000 in Ex. A, and approximately $10,000 in Ex. B.

### B.  Defendants' New York Contacts

Yu is a resident of Hong Kong.  Elva Green, Yu's closely held corporation, is organized under the laws of Hong Kong and has its principal place of business in Hong Kong.  *See* Compl. ¶ 2; Declaration of Anna Yu ("Yu Decl.") ¶ 1.

Yu asserts that neither she nor Elva Green has ever had an office in New York, nor has it ever had a bank account, property, employees, or agents in New York.  Yu Decl. ¶ 2.  Defendants claim that while they had a business relationship with Plaintiff, all supply sources were located in Hong Kong, all communications with these sources occurred in Hong Kong, and all invoices were prepared in China or Hong Kong.  *Id.* ¶¶ 3–4. Yu also states that Plaintiff, not Defendants, pursued the relationship and that Plaintiff visited Defendants in China and Hong Kong many times.  *Id.* ¶¶ 6–7.

Plaintiff's President, however, contends that Defendants maintained various contacts with New York.  *See* Shaller-Goldberg Decl.  It is undisputed that Defendants regularly sent shipments of clothing and invoices to Plaintiff in New York, *Id.* ¶¶ 6–7; Compl. ¶¶ 12–23, and regularly called and emailed with Plaintiff in New York.  *Id.*  Plaintiff also contends that all payments to Defendants were from a New York bank account.  *Id.* ¶ 9.

It is also undisputed that Yu, on behalf of Elva Green, met with Plaintiff in New York. *Id.* ¶ 4.  According to Plaintiff, Yu came to New York to discuss business on at least three occasions and the parties negotiated the terms of their relationship on Yu's first visit to New York.  *Id.* ¶ 4–5.  Yu, however, contends that her visits to New York were for personal, not business purposes, and that she only visited Plaintiff as a courtesy.  Yu Decl. ¶ 4–5.  According to Yu, the only business discussed during her visits to New York was how to establish a payment schedule on amounts due to Elva Green and the factories.  *Id.* ¶ 5.  Yu contends that no contract

was signed, no orders were placed, and no other business was discussed while she was in New York. *Id.*

## II. Legal Standard

### C. Rule 12(b)(2) Motion to Dismiss:  Lack of Personal Jurisdiction

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999)).  To meet this burden, the plaintiff must plead facts sufficient for a prima facie showing of jurisdiction.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  The court construes all of the plaintiff's allegations as true and resolves all doubts in its favor.  *Casville Invs., Ltd. v. Kates*, 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008); *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012)).  "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'"  *Art Assure Ltd., LLC v. Artmentum GmbH*, 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)).  As stated, courts may rely on additional materials outside the pleading when ruling on 12(b)(2) motions.  *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

### D.  Rule 12(b)(6) Motion to Dismiss: General Legal Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court also must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of plaintiffs' claims.

*Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. N.Y.C.*, 458 F.3d 150, 155 (2d Cir. 2006)).

### E.  Heightened Pleading Standard under Rule 9(b)

Beyond the requirements of Rule 12(b)(6), a complaint alleging fraud must satisfy the heightened pleading requirements of the Federal Rule of Civil Procedure 9(b) by stating the circumstances constituting fraud with particularity.   *See*, *e.g.*, *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir.2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319–20 (2007)).  Specifically, Rule 9(b) requires a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *DiMuro v. Clinique Laboratories, LLC*, 572 Fed. App'x. 27, 30 (2d Cir. 2014) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)).  Put another way, Rule 9(b) "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *See U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014).

Rule 9(b)'s heightened particularity requirement does not apply to allegations regarding fraudulent intent, also known as scienter, which may be alleged generally.  Plaintiffs, however, "are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Stephenson v. PricewaterhouseCoopers, LLP*, 482 Fed. App'x 618, 622 (2d. Cir. 2012) (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990)).  "An inference is 'strong' if it is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Loreley Financing (Jersey) No. 3. Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 176–77 (2d Cir. 2015) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

308, 324 (2007)).  Plaintiffs may assert a strong inference of fraudulent intent by alleging facts

that either (1) show that the defendant had both the "motive and opportunity" to commit the

alleged fraud, or (2) "constitute strong circumstantial evidence of conscious misbehavior or

recklessness."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006) (citation

omitted); *see also*, *e.g.*, *Ho v. Guoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 574 (S.D.N.Y.

2012).

### III. Discussion

When the Court is confronted by a motion raising a combination of Rule 12(b) defenses,

it will pass on the jurisdictional issues before considering whether the Complaint states a claim.

*See Darby Trading*, 568 F. Supp. 2d at 335; *Yellow Page Solutions*, 2001 WL 1468168, at *3

(citing *Rationis Enter., Inc. v. AEP/Borden Indus.,* 261 F.3d 264, 267–68 (2d Cir. 2001)).

Accordingly, the Court first addresses whether it has personal jurisdiction over Defendants, and

if it does, will next address whether Plaintiff has stated a claim upon which relief may be

granted.

#### A.  Personal Jurisdiction

In diversity or federal question cases, personal jurisdiction is determined in accordance

with the law of the forum in which the federal court sits.  *Whitaker*, 261 F.3d at 208 (2d Cir.

2001) (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir.1997)).  This determination

involves a two-step analysis.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567

(2d Cir. 1996).  In New York, the Court must first determine whether personal jurisdiction is

appropriate pursuant to the State's general jurisdiction statute, Civil Practice Law and Rules

("C.P.L.R.") § 301, or its long-arm jurisdiction statute, C.P.L.R. § 302(a).  If and only if the

Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the

second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Fifth Amendment Due Process Clause of the United States Constitution. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007).

### 1.  General Jurisdiction

Yu is not subject to the Court's general jurisdiction. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2852 (2011); *see also Magdalena v. Lins*, 123 A.D.3d 600 (1st Dept. 2014) (holding that a defendant was not subject to the court's general jurisdiction because she was domiciled in Uruguay). It is not disputed that Yu is not domiciled in New York. Thus, there is no basis for the Court to exercise general jurisdiction over her.

Neither is there a basis for the Court to exercise general jurisdiction over corporate Defendant Elva Green. A foreign corporation is subject to a court's general jurisdiction when its affiliations with the forum State are "so 'continuous and systematic' as to render [it] essentially at home" there. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear,* 131 S. Ct. at 2851).[3] The classic, but not exclusive, bases of general jurisdiction are a corporation's place of incorporation and principal place of business, which "have the virtue of being unique— that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* at 760. Additional indicia of a corporation's presence in the forum include whether the corporation:  (1) has employees, agents, offices, bank accounts, or property within the state; (2) is authorized to

---

[3] The Supreme Court's holding in *Daimler*, 134 S. Ct. at 761, "expressly cast doubt on previous Supreme Court and New York Court of Appeals cases that permitted general jurisdiction on the basis that a foreign corporation was doing business[.]" *Gucci America v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014); *see also* Alexander, Practice Commentary, McKinney's Cons Laws of  N.Y., Civil Practice Law and Rules, § 301 ("*Daimler AG v. Bauman*, 2014, 134 S.Ct. 746, has brought an end to" New York's doing business test for general jurisdiction.).

do business in the state; (3) has a phone listing in the state; (4) does public relations work in the state; (5) pays state income or property taxes; and (5) the volume of business it conducts with state residents. *Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 437 (S.D.N.Y. 2003).

Elva Green is not "essentially at home" in New York.  It is neither incorporated nor headquartered here.  Compl. ¶ 9.  Moreover, Plaintiff does not dispute that Elva Green does not have an office, bank accounts, employees, or agents in New York.  *See* Yu Decl. ¶ 2.   Nor has Plaintiff claimed that Elva Green is licensed to conduct business in the state or pays New York State income or property taxes.  As alleged, Elva Green's sole tie to New York is its relationship with Plaintiff.  *See* Shaller-Goldberg Decl. ¶¶ 4, 6.  This relationship, however, hardly renders it "essentially at home" in New York.  In fact, Elva Green operates almost exclusively out of Hong Kong.  In other words, Elva Green does not have a unique and ascertainable presence in New York and subjecting it to general jurisdiction based solely on its relationship with Plaintiff would surely "contravene the purposefully narrow reach and long-standing stringent application of C.P.L.R. § 301."  *Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, 05 Civ. 6893 (MBM), 2006 WL 1147963, at \*4 (S.D.N.Y. May 1, 2006).

### 2. Specific Jurisdiction

Defendants, however, may be subject to personal jurisdiction under New York's long-arm statute.  Under C.P.L.R. § 302(a), a court may exercise personal jurisdiction over any non-domiciliary who, either in person or through an agent:  (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state . . . " (3) "commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other

persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;" or (4) "owns, uses or possesses any real property situated within the state."  N.Y. C.P.L.R. § 302(a)(1)–(4) (McKinney).  Plaintiff argues Defendants are subject to the Court's jurisdiction under § 302(a)(1) and § 302(a)(3).[4]  Because jurisdiction may properly be asserted pursuant to C.P.L.R. § 302(a)(1), the Court does not discuss whether jurisdiction is proper under § 302(a)(3).

### i.  § 302(a)(1)

Under § 302(a)(1), a court examines "(1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction."  *Best Van Lines*, 490 F.3d at 246 (citing *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 850 N.E.2d 1140, 1142, 7 N.Y.3d 65, 818 N.Y.S.2d 164 (N.Y. 2006)).

A defendant transacts business within the meaning of § 302(a)(1) when it purposefully "avails itself of the privilege of conducting activities [in New York], thus invoking the benefits and protections of its laws."  *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 229 N.E.2d 604, 607 (N.Y. 1967)).  Section 302(a)(1) is a "single act" statute:  "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."  *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43, 71 N.Y.2d 460, 527 N.Y.S.2d 195 (N.Y. 1988) (citations omitted).  By the same token, the New York Court of

---

[4] Plaintiff makes no allegations that jurisdiction is proper under § 302(a)(2) or (a)(4).

Appeals has upheld long-arm jurisdiction where "commercial actors and investors us[e] electronic and telephonic means to project themselves into New York to conduct business transactions." *Deutsche Bank Sec.*, 850 N.E.2d at 1142–43, 7 N.Y.3d at 71, 818 N.Y.S.2d at 167.  This is necessitated by "the growth of national markets for commercial trade," and technological advances that "enable a party to transact enormous volumes of business within a state without physically entering it."  *Id*; *see also Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119, 1123 (W.D. Pa. 1997) ("[A]s technological progress has increased the flow of commerce between States, the need for jurisdiction has undergone a similar increase.") (internal citation omitted).

Here, Defendants engaged in "the purposeful creation of a continuing relationship with a New York corporation."  *George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 653 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977).  Defendants were in a business relationship with Plaintiff from 2009 until the summer of 2014, and had frequent contact with Plaintiff during that time.  Compl. ¶¶ 2–3.  According to Plaintiff, Yu came to New York to discuss business on three occasions. *See* Shaller-Goldberg Decl. ¶¶ 4–5.  While Defendants contest that these visits were not for business purposes, Yu admits that some business was discussed, although she claimed it was limited to sorting out payment for the factory invoices.  *See* Yu Decl. ¶ 5.  Defendants also regularly communicated via email and telephone with Minnie Rose, made monthly shipments of clothing, and sent allegedly fraudulent invoices to Minnie Rose in New York.  Compl. ¶¶ 12–23.  Moreover, the financial scope of Defendants' relationship with Plaintiff was substantial.  Plaintiff claims it paid Defendants 1.4 million "in legitimate commission."  Shaller-Goldberg Decl. ¶ 9.  Viewing these contacts together, the Court finds that Defendants purposefully transacted business in New York.  *See Three Five Compounds, Inc. v. Scram Techs., Inc.*, 11

12

Civ. 1616 (RJH), 2011 WL 5838697, at *10 (S.D.N.Y. Nov. 21, 2011) (noting that "courts in this district have found personal jurisdiction where parties' communications were part and parcel of an extended relationship involving multiple transactions or the provision of services over multiple years.").[5]

The Court also finds that Plaintiff's causes of action arise from Defendants' purposeful transaction of business in New York.  Plaintiff alleges that for the entirety of its business relationship with Defendants, Defendants inflated the factory invoices and fraudulently retained the difference.  *See* Compl. ¶ 3.  The instant action against Defendants for fraudulent misrepresentations and unjust enrichment is based on that fraudulent scheme.   Because Defendants purposefully transacted business in New York, and that business lead to the purportedly fraudulent scheme that gave rise to the current litigation, personal jurisdiction is appropriate under New York law.

### ii.  Due Process

Having found that § 302(a)(1) confers jurisdiction over Defendants, the Court must examine whether its assertion of personal jurisdiction comports with due process.  *Best Van Lines*, 490 F.3d at 242.  Due process demands that defendants have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal citations omitted).  The due process inquiry has two parts:  (1) "the court must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise

---

[5] Defendants' reliance on *Hutton*, 275 F. Supp. 2d 428 (S.D.N.Y. 2003) is misplaced.  *See* Defs.' Mem. at 8.  The alleged contract between the plaintiff and defendants in *Hutton* was a one shot business transaction that was negotiated and executed in Colorado.  *Id.*  Here, by contrast, Defendants and Plaintiff engaged in an ongoing business relationship, the terms of which were allegedly negotiated in New York.  Shaller-Goldberg Decl. ¶¶ 4–6.

of personal jurisdiction," and (2) "the court must determine whether the assertion of personal jurisdiction is reasonable under the circumstances of the particular case." *Schottenstein v. Schottenstein*, 04 Civ. 5851 (SAS), 2004 WL 2534155, at *7 (S.D.N.Y. Nov. 8, 2004) (citing *Metro. Life*, 84 F.3d at 567).  Where a non-domiciliary "avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there," the Court's exercise of personal jurisdiction will not offend due process.  *Kreutter*, 522 N.E.2d at 43, 71 N.Y.2d at 466, 527 N.Y.S.2d at 198.

The requisite "minimum contacts" analysis "overlaps significantly" with New York's § 302(a)(1) inquiry into whether a defendant transacted business in the State.  *Brown v. Web.com Group, Inc.*, 57 F.Supp.3d 345, 358 (S.D.N.Y. 2014) (citing *Best Van Lines*, 490 F.3d at 247). Accordingly, the same facts supporting jurisdiction under § 302(a)(1), support the minimum contacts requirement of due process.  As stated *supra*, the Court finds that Defendants purposefully engaged in business transactions in New York through its six-year relationship with Plaintiff.  For those same reasons, Defendants have sufficient minimum contacts to justify the court's exercise of personal jurisdiction under the due process clause.

Part two of the due process inquiry—the reasonableness of a Court's assertion of personal jurisdiction—depends on a consideration of "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the most efficient resolution of the controversy; and (5) the interests of the state in furthering substantive social policies." *Schottenstein*, 2004 WL 2534155, at *8 (citing *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987), and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)).  However, "where a plaintiff makes the threshold showing of the minimum

14

contacts required for the first test, a defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriquez*, 305 F.3d 120, 129 (2d Cir. 2002) (quoting *Metro. Life*, 84 F.3d at 568).

Here, Defendants do not present a compelling argument. *First*, even accepting Defendants' argument that the "burden of litigating this case in New York on Defendant Yu is clear," Defs.' Reply Mem. 6, the "conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Metro. Life*, 84 F.3d at 574. *Second*, New York has a strong interest in adjudicating cases of alleged fraud perpetrated against New York corporations. *Third*, Plaintiff also has a strong interest in efficiently adjudicating this matter in New York. Defendants' argument that Hong Kong is a more suitable forum for this matter—because of the burden on Defendants and the "obvious difficulties" of flying an "indeterminate" number of witnesses located in Hong Kong to New York, *see* Defs.' R. Mem. at 6–7—is not enough to compel this Court to hold its assertion of personal jurisdiction unreasonable. While many witnesses are likely in Hong Kong, documentary evidence is likely in both New York and Hong Kong, and any documentary evidence in Hong Kong can easily be sent to New York. *Finally*, Defendants do not assert, nor can the Court discern, any substantive social policies that would be furthered by permitting this case to be heard in Hong Kong. On balance, the Court finds that its assertion of personal jurisdiction over Defendants amply comports with due process. Defendants' motion to dismiss for lack of personal jurisdiction is therefore DENIED.

### B.  Failure to State a Claim

#### 1.  Fraud

A claim for fraudulent misrepresentation under New York law requires a plaintiff show "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186–87 (2d Cir. 2004) (quoting *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir.1995)).  In addition, "the Complaint must . . . state with particularity the circumstances of the fraud under Rule 9(b) and contain sufficient facts, accepted as true, to state claims for relief for common-law fraud that are facially plausible under Rule 8(a)(2)."  *Woori Bank v. RBS Sec., Inc.*, 910 F. Supp. 2d 697, 700–01 (S.D.N.Y. 2012).

Here, Defendants contend that Plaintiff fails to adequately allege under *Twombly/Iqbal* or Rule 9(b) that Defendants made material misstatements, intended to defraud Plaintiffs, or that Plaintiff relied on such alleged misstatements.  *See* Defs.' Mem. at 11–12.

#### i.  Material Misrepresentation

Plaintiff alleges that Defendants made material misrepresentations by (1) creating fraudulent invoices that inflated the manufacturing costs of "each and every" listed item, Compl. ¶¶ 16, 19; and (2) demanding reimbursement from Plaintiff for out-of-pocket payments it never actually made to the factories.  *Id.* ¶¶ 21, 22.   Plaintiff specifies that *all* of the invoices submitted by Defendants were fraudulent.  *Id.* ¶ 3, 16, 19, 21–22.

While Plaintiff does not allege the specific date of every alleged misstatement, it is not required to do so at this juncture.  *See Rana v. Islam*, 305 F.R.D. 53, 58 (S.D.N.Y. 2015) ("To

satisfy Rule 9(b), a plaintiff need not plead dates, times, and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based.") (internal quotations and citations omitted).  The fact that Plaintiff has not attached every allegedly fraudulent invoice is not dispositive at this point in the litigation.

Defendants argue that because Plaintiff provides only a "mere sampling of alleged frauds" by attaching only two invoices, it must meet the test discussed in *United States ex rel. Corp. Compliance Assocs. v. New York Soc'y for the Relief of the Ruptured & Crippled, Maintaining the Hosp. for Special Surgery*, 07 Civ. 292 (PKC), 2014 WL 3905742 at \*15 (S.D.N.Y. Aug. 7, 2014) ("*Special Surgery*").  Defs.' R. Mem. at 9.  In *Special Surgery*, an action brought under the False Claims Act ("FCA"), the court noted that examples of false claims may satisfy Rule 9(b)'s particularity requirement depending on "the number and type of examples in relation to the universe of claims, and what can be truthfully alleged about the relationship of the examples to the universe—i.e. does the entirety of the universe or merely some follow the examples."   2014 WL 3905742 at \*15.  Here, Plaintiff alleges that the entirety of the universe follows the examples.  Compl. ¶ 3.  In any event, this purported test was discussed only in *dicta* and was not applied by the court.  Moreover, it is unclear whether *Special Surgery* would also apply to non-FCA common law fraud actions.[6]

Defendants also contend that Plaintiff's fraud allegations are also insufficient under Rule 9(b) because Plaintiff improperly (1) makes the majority of its allegations on the basis of

---

[6] Defendants argue that *Special Surgery* should apply to common law fraud actions because the plaintiffs in *Special Surgery* argued that 9(b) requirements are even laxer in an FCA cases than common law fraud cases.  Defs.' Opp'n Mem. at 14 n.4.  However, in *Special Surgery*, the court questioned whether "a relaxed pleading standard" under Rule 9(b) applies in FCA cases.  *Special Surgery*, 2014 WL 390574 at \*15 n.8 ((citing *Wood ex rel. U.S. v. Applied Research Assoc., Inc.*, 328 Fed. App'x 744, 748 n.1 (2d Cir. 2009) (summary order)).

information and belief, *see* Compl. ¶¶ 15–16, 18–23; and (2) does not specifically identifying

which Defendant, Yu or Elva Green, made which statement.  Defs.' Mem. at 14.

*First*, it is not necessarily improper for a Plaintiff to make allegations, even fraud

allegations, upon "information and belief."  Under Rule 9(b) "fraud allegations may not be based

upon information and belief" unless "the facts underlying the fraud are peculiarly within

opposing party's knowledge[.]"  *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300,

310 (S.D.N.Y. 2009); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)

(finding a plaintiff is not prevented "from pleading facts 'upon information and belief' where (1)

the facts are peculiarly within the possession and control of the defendant or (2) where the belief

is based on factual information that makes the inference of culpability plausible.").  However,

"[e]ven in those circumstances, the plaintiff still bears the burden of alleging the facts upon

which her or his belief is founded."  *Allied Irish Banks, P.L.C. v. Bank of America, N.A*, 03 Civ.

3748 (DAB), 2006 WL 278138, at *6 (S.D.N.Y. Feb. 2, 2006).

Here, Plaintiff describes the allegedly fraudulent scheme and attaches two of the

fraudulent invoices that clearly show the purported alterations.  Information which might tend to

establish that the balance of the invoices were similarly inflated is solely within Defendants

knowledge at this early stage of litigation.

*Second*, while Rule 9(b) requires the plaintiff to plead facts from which fraud may be

reasonably inferred as to each defendant, pleading requirements may be relaxed when the

information is exclusively within the defendant's knowledge "as long as the plaintiff has

adequately set forth the factual basis for the allegations."  *Lavastone Capital LLC v. Coventry

First LLC*, 14 Civ. 7139 (JSR), 2015 WL 1939711, at *9 (S.D.N.Y. Apr. 22, 2015); *see also*

*DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, 265 F. Supp. 2d 254, 264 (S.D.N.Y. 2003).  Here, as stated, the details of the fraud are likely only within Defendants' knowledge and Plaintiff identifies the purportedly fraudulent invoices as the factual basis for its allegations.  Moreover, there is no genuine question regarding which allegations of fraud involved which Defendants because Plaintiff claims that Elva Green was a single purposed entity that was closely held by Yu and both engaged in the same fraudulent conduct.  *See Buyers and Renters United to Save Harlem v. Pinnacle Group N.Y. LLC*, 575 F. Supp. 2d 499, 508 n.3 (S.D.N.Y. 2008) (where "[t]here are only two defendants" and one of those defendants is "the founder, investor, owner and CEO of [the other defendant], and has principal authority and responsibility for overseeing [its] operations," an argument "that the SAC runs afoul of Rule 9(b) by failing to specify who among the two defendants committed which alleged bad acts . . . barely passes the straight face test[.]").[7]

Defendants' reliance on *Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993), is inapposite.  In *Mills*, the Second Circuit found that the plaintiff failed to satisfy Rule 9(b)'s particularity requirement because he did "not link[] the alleged fraudulent statements to particular Directors [and] Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to "'defendants.'"  12 F.3d at 1175 (citing *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)).  Moreover, the court explained that "[t]he mere fact that the Directors were controlling persons at [the corporation] does not link them to the statements; the plaintiffs also had to allege that the Directors *personally* knew of, or participated in, the fraud."  *Id.*  Here, however, Plaintiff alleges that "*Yu*, through her closely held corporation, Elva Green, was responsible for . . . invoicing Minnie Rose," Compl. ¶ 2 (emphasis added), and

---

[7] While Plaintiff has also sued John Does 1–10, the Complaint does not ascribe any specific role to the John Does.

that Elva Green and/or Yu purportedly defrauded Plaintiff by inflating the costs listed on these invoices. *Id.* ¶ 3. Accordingly, Plaintiff sufficiently alleges that both Yu and Elva Green participated in and were linked to the alleged fraud.

### ii. Fraudulent Intent

Plaintiff also sufficiently alleges a "strong inference" of Defendants' fraudulent intent by relying on allegations that Defendants had both the "motive and opportunity" to commit the alleged fraud. *ECA*, 553 F.3d at 198; *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006). "In order to raise a strong inference of scienter through 'motive and opportunity'," plaintiffs must allege defendants "benefitted in some concrete and personal way from the purported fraud." *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 72 (S.D.N.Y.2010) (citation omitted). The scheme alleged in the complaint is exceedingly simple and the Defendants' motive and opportunity clear: Defendants allegedly had exclusive access to the invoices from the factories, altered the invoices before presenting them to Plaintiff, and were able to enrich themselves as a result. *See* Compl. ¶¶ 16–17, 20, 23. These alleged benefits are concrete and personal, and thus, create an inference of scienter "at least as compelling as any opposing inference one could draw from the facts alleged." *Loreley*, 797 F.3d at 177 (quoting *Tellabs*, 551 U.S. at 324).

### iii. Reliance

Defendants argue Plaintiff's claim fails because it did not exercise due diligence in discovering Defendants' fraudulent activity. Defs.' Mem. at 15. Whether a fraud plaintiff's reliance was reasonable depends on "the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *See Woori Bank*, 910 F. Supp. 2d at 701 (internal citations and

quotations omitted).  Because reliance "involve[s] many factors to consider and balance, no single one of which is dispositive, it is often a question of fact for the jury rather than a question of law for the court."  *Id.* (internal citations and quotations omitted); *Hyosung Am., Inc. v. Sumagh Textile Co., Ltd.*, 25 F. Supp. 2d 376, 385–86 (S.D.N.Y. 1998) ("Where, as here, the parties are engaged in a commonplace commercial transaction, plaintiff's failure to review readily accessible information will not defeat its fraud claim unless it was placed on guard or practically faced with the facts of the fraud." (internal citations and quotations omitted))*, aff'd*, 189 F.3d 461 (2d Cir. 1999).

Defendants' reliance on *Vermeer Owners, Inc. v. Guterman*, 169 A.D.2d 442, 564 N.Y.S.2d 335 (1st Dept. 1991) is misplaced.  In *Vermeer*, the court overturned the trial court's finding of common law fraud because, after full development of the record, the plaintiff failed to provide any evidence that it relied on the purported misrepresentations.  *Id.* at 445.  The court explained that "[w]here a party has means available to him for discovering, by the exercise of ordinary intelligence, the true nature of a transaction he is about to enter into, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations" and found that the alleged misstatements and resulting losses were "readily discernible from analysis of the financial terms of the lease which were fully disclosed[.]"  *Id.*  Here, at the motion to dismiss stage and before full development of the record, there has been no showing that the alleged fraud was "readily discernable."  When Plaintiff was ultimately provided with proof of the alleged fraud, it promptly severed the relationship and filed suit.  Accordingly, the Court finds that Plaintiff's fraudulent misrepresentation claims are sufficiently plead under Rules 12(b)(6) and 9(b).

### 2.   Fraud Arising Out of A Breach of Contract

Even where a fraud claim is sufficiently plead, "[u]nder New York law, no fraud claim is
cognizable if the facts underlying the fraud relate to the breach of contract."   *Auerbach v. Amir*,
06 Civ. 4821 (RJD), 2008 WL 479361, at *5 (E.D.N.Y. Feb. 19, 2008); *see also Kriegel v.
Donelli*, 11 Civ. 9160 (ER), 2014 WL 2936000, at *13 (S.D.N.Y. June 30, 2014) ("Under New
York law, a fraud-based claim must be 'sufficiently distinct from [a] breach of contract claim'
where it stems from an alleged breach of contract.").

Defendants contend Plaintiff's fraud claim arises out of its contractual relationship with
Defendant and thus, must be dismissed under the Second Circuit's decision in
*Bridgestone/Firestone, Inc. v. Recovery Credit Servs. Inc.*, 98 F.3d 13, 20 (2d Cir. 1996);  Defs.'
Mem. at 11.  In *Bridgestone*, the Second Circuit held that where fraud claims are brought
alongside contract claims, the fraud claim may only proceed where it will "(i) demonstrate a
legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent
misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are
caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone*, 98 F.3d
at 20); *see also Kriegel*, 2014 WL 2936000, at *13.  Here, while Plaintiff asserts no cause of
action for breach of contract,  "a fraud claim may not be used as a means of restating what is, in
substance, a claim for breach of contract" because, if allowed, parties may recharacterize
contract claims in order to avoid unenforceable contracts.  *Wall v. CSX Transp., Inc.*, 471 F.3d
410, 413–14 (2d Cir. 2006).  However, not every fraud claim is foreclosed in an action related to
a contract.  *Id.*at 416.  For instance, a stand-alone fraud claim survives if the alleged fraud falls
within one of the three *Bridgestone* exceptions.  *See id.* at 416–17( finding that the allegedly
fraudulent scheme was collateral or extraneous to the contract); *see also Turnbull v. Kling*, 98

Civ. 5925 (SAS), 1999 WL 672561 at *4 (S.D.N.Y Aug. 26, 1999) (a valid fraud claim may be premised on misrepresentations collateral to the contract—the second *Bridgestone* exception.).[8]

Misrepresentations of present facts made post-contract formation are collateral or extraneous to the contract and are actionable in fraud. *Jordan Inv. Co. Ltd. v. Hunter Green Inv. Ltd.*, 00 Civ. 9214(RWS), 2003 WL 1751780, at *8 (S.D.N.Y. 2003); *see also Eagle Comtronics, Inc. v. Pico Prod., Inc.*, 682 N.Y.S.2d 505, 507 (1998) ("Plaintiff does not allege merely that Defendant entered into the contract while misrepresenting its intent to perform as agreed, but alleges that, after the contract was entered into, defendant repeatedly misrepresented or concealed existing facts."). In *Jordan*, plaintiff, a tax-exempt charitable trust, sued an emerging markets fund and parties affiliated with it for fraudulently investing the trust's money.[9] *Id.* at *3–4. Defendants explicitly agreed in the operative documents not to use leverage (i.e. borrowed money) when investing plaintiff's funds because the trust risked accruing taxable income if it made leveraged investments. *Id.* at 3. Allegedly, unbeknownst to plaintiff, defendants repeatedly made leveraged investments with the trust's money, intentionally failed to disclose the leveraged investments, and concealed the leveraged investments. *Id.* at *3–4.

Defendants argued that the plaintiff failed to state a claim for fraud because the allegations merely amounted to breach of contract, and the concealment of a breach of contract "is insufficient to transform what would normally be a breach of contract action into one for fraud." *Id.* at *7. However, the court held that defendants did more than conceal a mere failure

---

[8] In assessing whether alleged fraud is "collateral or extraneous to the contract," courts examine "whether the alleged misrepresentation was warrantied or not mentioned by the contract; whether it was the misstatement of a present fact which induced entry into the contract; whether it constituted the failure to perform a duty specified in the contract; and whether it is generally duplicative of the breach of contract claim." *Kriegel*, 2014 WL 2936000, at *14.

[9] Plaintiff in *Jordan* also alleged negligence, breach of fiduciary duty, conversion, and violation of N.Y. General Business Law § 349, but, like here, did not allege breach of contract. *Id.* at *4.

to perform a contractual obligation because defendants made affirmative misrepresentations of facts that would have existed if the contract were performed. *Id.* at *8. That is, defendants did not merely conceal a failure to invest plaintiff's money in accordance with the contract, they actively misrepresented how they invested plaintiff's money. *Id.*

Here, like in *Jordan*, Defendants actively misrepresented present facts and the allegedly fraudulent statements are thus collateral to the contract.[10] The terms of the oral agreement between the parties are straightforward. The agreement required Defendants to select factories for manufacturing, supervise production, and invoice Plaintiff. Compl. ¶¶ 3–4. In turn, it required Plaintiffs to pay for the cost of manufacturing plus a 10% commission. Compl. ¶ 4. Plaintiff does not allege that Defendants failed to perform under the above agreement. Rather, Plaintiff alleges that Defendants actively concealed the actual price of manufacturing each time they sent Plaintiff invoices. Compl. ¶ 3. Therefore, the Court finds that the alleged fraud on the basis of these misrepresentations is collateral to the contract.

Accordingly, Defendants' motion to dismiss Plaintiff's fraud claim is DENIED.

---

[10] Though neither party cites them, the Court notes that at least two cases in this District have held that allegedly inflated invoices are not sufficiently collateral to breach of contract claims to support a stand-alone fraud claim. *See W.B. David & Co., Inc. v. DWA Commc'ns, Inc.*, 02 Civ. 8479 (BSJ), 2004 WL 369147, at *4 (S.D.N.Y. Feb. 26, 2004); *see also Vista Food Exchange, Inc. v. Champion Foodservice*, LLC., 14 Civ. 804 (RWS), 2015 WL 5000863, at *8 (S.D.N.Y. Aug. 18, 2015) (on appeal). These cases, in turn, rely on authority that stands for the well-established proposition that misrepresentations of a *future intent* to perform under a contract are not collateral to the contract. *W.B. David & Co.*, 2004 WL 369147, at 5 (citing *Frontier-Kemper Constructors, Inc. v. Flatiron Constructors, LLC*, 224 F. Supp. 2d 520, 528 (W.D.N.Y. 2002) (holding, "[w]ith regards to *future promises*, after *Bridgestone/Firestone* it is clear that in order to be considered 'collateral,' the promise must be a promise to do something other than what is expressly required by the contract.") (internal citations omitted) (emphasis added)); *see also Vista Foods*, 2015 WL 500863, at *8 (citing *W.B. David & Co.*, 2004 WL 369147, at 5). However, consistent with this opinion, *Frontier-Kemper* and other Southern District courts have held that misrepresentations regarding *present facts*, as opposed to ones reflecting future intent to perform, are collateral to the contract. *See Frontier-Kemper*, 224 F. Supp. 2d at 528 (holding, "[w]ith regard to misstatements of *present fact*, the New York courts and the courts in this Circuit generally agree that actions for fraudulent inducement are not barred.") (emphasis added); *see also Solutia Inc. v. FMC Corp.*, 385 F. Supp. 2d 324, 342 (S.D.N.Y. 2005) (citing *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986)). Accordingly, the Court is not persuaded that *W.B. David & Co* and *Vista Foods* require a different result here.

### 3. Unjust Enrichment

To prevail on a claim for unjust enrichment in New York, a plaintiff must establish: "(1) the defendant benefitted; (2) at the plaintiff's expense; and (3) equity and good conscience require restitution.'" *Tasini v. AOL, Inc.*, 505 Fed. Appx. 45, 47 (2d Cir. 2012) (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)). Further, unjust enrichment claims grounded in fraud must meet the pleading requirements of Rule 9(b). *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) ("Claims that sound in fraud are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b)").

As discussed *supra*, Plaintiff alleges that Defendants fraudulently benefitted at its expense and argues that equity and good conscience require restitution. Compl. ¶¶ 16–17, 20–23, 37, 42. The Court has determined that Plaintiff pleaded the fraud allegations with the requisite Rule 9(b) particularity.

Defendants argue that the existence of a valid contract precludes a claim for unjust enrichment. Defs.' Mem. at 16. The existence of an enforceable contract governing a particular subject matter "ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Valley Juice Ltd., Inc. v. Evian Waters of France, Inc*., 87 F.3d 604, 610 (2nd Cir. 1996). Where, as here, "there is a bona fide dispute concerning . . . whether the contract covers the dispute in issue," the quasi-contract claim may be pled in the alternative. *Nahabedian v. Intercloud Sys., Inc.*, 15 Civ. 00669 (RA), 2016 WL 155084, at *4 (S.D.N.Y. Jan. 12, 2016). Accordingly, Defendants' motion to dismiss the unjust enrichment claim is DENIED.

### 4. Piercing the Corporate Veil

Defendants' contention that the allegations against Yu must be dismissed because Plaintiff failed to pierce the corporate veil is without merit. "[I]t is well-established that under

New York Law, piercing the corporate veil is not required to hold a corporate officer liable for his company's torts:  'a corporate officer who controls corporate conduct and thus is an active individual participant in that conduct is liable for the torts of the corporation.'"  *City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 163 (S.D.N.Y. 2010) (quoting *State of N.Y. v. Shore Realty Corp.*, 759 F.2d 1032, 1052 (2d Cir. 1985).  Elva Green is allegedly Yu's closely held corporation and Yu is alleged to have personally participated in the fraudulent conduct.  Compl. ¶¶ 2–3.  Accordingly, Plaintiff is not required to pierce the corporate veil to assert claims against Yu.

### 5.  Statute of Frauds

Defendants argue the Statute of Frauds prevents Plaintiff's claim because it "bars the enforcement of oral contracts that cannot be performed within one year."  Defs.' Mem. at 20.  However, as discussed above, Defendants' statute of frauds argument fails because Plaintiff's claims are collateral and extraneous to the contract.

### 6.  Statute of Limitations

Defendants' contention that Plaintiff's claims are time-barred by the six-year statute of limitations applicable to claims for fraud and unjust enrichment, C.P.L.R. § 213(8), also fails.  Because six years did not elapse between the allegedly wrongful acts—the first allegedly fraudulent invoice was sent in August, 2009—and the commencement of this action on March 13, 2015, *see* Shaller-Goldberg Decl. ¶¶ 7, 8, 10, Plaintiff's claims are not time-barred.

### 7.  Laches

Defendants' argument that Plaintiff's claims are barred by the doctrine of laches does not fare any better.  "When a limitation on the period for bringing suit has been set by statute, laches will generally not be invoked to shorten the statutory period."  *Ikelionwu v. U.S.*, 150 F.3d 233, 238 (2d. Cir. 1988).  Here, C.P.L.R. § 213(8) sets the statute of limitations for fraud and unjust

enrichment claims and Defendants have provided no reason why it should be shortened.

Accordingly, Plaintiff's claim is not barred by laches.

## V. Conclusion

For the reasons stated above, Defendants' motion to dismiss is DENIED.  The parties are directed to appear for a conference on April 5, 2016, at 10:00 a.m.  The Clerk of the Court is respectfully directed to terminate the motion, Doc 9.

It is SO ORDERED.

Dated:     March 11, 2016
           New York, New York

Edgardo Ramos, U.S.D.J.