UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MINNIE ROSE LLC,

                              Plaintiff,

        – against –

ANNA YU a/k/a ANNA YUE, ELVA GREEN
CLOTHING COMPANY LTD a/k/a ELVA
CLOTHING (HK) CO., LTD., and JOHN DOES
1-10,

                              Defendants.

ELVA CLOTHING (HK) CO., LTD., a/k/a
ELVA GREEN CLOTHING COMPANY LTD,

                              Third-Party Plaintiff,

        – against –

LISA SHALLER GOLDBERG and JOHN
DOES 1-10,

                              Third-Party Defendants.

**OPINION & ORDER**

15-cv-1923

R_AMOS_, D.J.:

        Minnie Rose, LLC, a New York clothing retailer and fashion brand, brings this

action against Anna Yu, Elva Green Clothing Company Ltd. ("Elva Green"), and John

Does 1-10, alleging fraudulent misrepresentation and unjust enrichment.  Pending before

the Court is Minnie Rose's motion for sanctions pursuant to Federal Rule of Civil

Procedure ("FRCP") 37(e)(2).  For the reasons set forth below, the motion is DENIED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  The Dispute

The Court assumes familiarity with the facts as previously set forth in its March 11, 2016 Order denying Defendants' motion to dismiss.  Doc. 18.  The Court will summarize only the facts necessary to resolve this motion.

Minnie Rose is a New York corporation that designs, manufactures, and sells women's contemporary clothing.  ¶ 1.  In 2009, Minnie Rose engaged Elva Green, a Hong Kong-based corporation, through its officer, Anna Yu, to become Minnie Rose's primary overseas sourcing agent.  ¶¶ 1–2, 12.  In that capacity, Defendants selected factories to manufacture Minnie Rose's clothing, supervise production, negotiate prices, and coordinate Minnie Rose's payment of the factories' invoices.  ¶¶ 2, 13.  In exchange for its services, Minnie Rose agreed to pay Defendants a commission equal to 10% of the Free-on-Board[2] cost of each item produced and shipped to it.  ¶ 13.  Eventually, Minnie Rose began using only factories recommended by Defendants, all of which were located in China, to produce its clothing.  ¶ 12.  These factories would send invoices to Defendants, and Defendants would send the invoices to Minnie Rose.  ¶ 15.  This process continued until the summer of 2014.  ¶ 3; Doc. 13 ¶ 10.

Minnie Rose alleges that it learned that Defendants were defrauding it throughout their business relationship when it received real, unaltered invoices from Defendants in the summer of 2014.  Doc. 13 ¶ 10.  During its five-year relationship with Defendants, Minnie Rose claims that it received invoices which inflated the actual cost of services rendered by Chinese factories.  ¶ 8.  Minnie Rose alleges that Defendants billed for a higher price than what was due to the factories, pocketing the difference.  ¶¶ 3, 16, 20.

---

[1] Unless otherwise noted, citations to "¶" refer to the complaint, Doc. 1.

[2] "Free on Board" means the shipping costs "[u]p to getting goods on ship in the port of departure . . . ." THE LAW DICTIONARY, https://thelawdictionary.org/free-on-board-fob/ (last visited Mar. 6, 2022).

For example, Minnie Rose claims that Defendants altered the payment instructions on the invoices from Tonglu Caili Garment Co. ("Caili"), one of the factories Defendants engaged to manufacture Minnie Rose's products.  ¶ 19.  Minnie Rose claims that the Caili invoices directed payments to a bank account at Hang Seng Bank Limited (the "Hang Seng account"),[3] which was owned by Defendants instead of the factory—the latter of which was listed on the original invoice.  ¶ 19; Doc. 98 ¶ 9.  Minnie Rose claims to have suffered at least $2,200,000 in damages as a result of this alleged fraud. Compl. ¶ 33.[4]

### B.  Procedural History

Minnie Rose filed its complaint on March 13, 2015.  Doc. 1.  On May 21, 2015, Defendants moved to dismiss the complaint for failure to allege diversity jurisdiction, failure to state a claim, and because the statute of frauds, statute of limitations, and laches barred the claim.  Doc. 9.  On March 11, 2016, the Court denied Defendants' motion. Doc. 18.  On June 7, 2016, the Court referred this case to mediation, but the parties failed to resolve the dispute in mediation.  Doc. 36.

On May 15, 2017, Minnie Rose served its first discovery demand on Defendants. Doc. 98-2.  As relevant to this motion, Minnie Rose requested

> 7. Any and all documents and communications that relate to Account No. 390-372548-883 with Hang Seng [], including but not limited to[] all bank statements, records, deposit slips, and cancelled checks.

---

[3] The bank account at issue bore the name "Masa Co.," but Defendants do not explain what "Masa Co." is.

[4] In their answer, Defendants admitted that, "in certain cases," the invoices sent to Minnie Rose included the amount owed to a factory *and* "other charges . . . that were not owed to" the factories.  Doc. 19 ¶ 20. They nevertheless denied that such invoices were "fraudulent" or "inflated."  Doc. 19 ¶¶ 3, 5.  And they argue that the discrepancies are explained by the legitimate business practices of Defendants.  Doc. 111 at 10.  For example, in a sworn statement from Shing Li Jun, a representative of the Caili factory, Jun explains that the lower-cost invoices "were not completed yet" and did not include the costs of yarn materials, labels, trims, and accessories.  Doc. 111-1 at 3.

*Id.* at 7.  Defendants responded to Minnie Rose's above request on June 30, 2017, objecting to it as "vague and ambiguous, overbroad, [and] unduly burdensome" but stating that "Elva Green and Anna Yu [would] produce or make available . . . responsive, non-privileged documents . . . in their possession, custody or control that [could] be located with reasonable effort."  Doc. 98-3 at 10–11.  In response to Minnie Rose's request for Hang Seng records, Defendants produced one email between Anna Yu and Minnie's CFO.  Doc. 98-4.

On August 15, 2017, Minnie Rose's counsel sent a letter to the Court requesting an extension to the close of discovery.  Doc. 47.  Plaintiff's counsel wrote that "all parties [had] been diligent in advancing this litigation" and that "they had exchanged an initial set of documents."  *Id.* at 1.

The following year, on February 12, 2018, Minnie Rose's new counsel[5] sent the Court another letter asking to extend discovery.  Doc. 52.  Its letter explained that the case had "slowed down," in part, because this firm ha[d] not received all the documents collected by former counsel to Minnie Rose and because Defendants and potential witnesses were in China.  *Id.* at 1.  Minnie Rose's counsel again indicated that "[t]o date, all parties have been diligent in advancing this litigation."  *Id.*  The Court approved the extension, moving the discovery deadline to September 20, 2018.  Doc. 55.

Three months later, on May 9, 2018, Defendants' counsel wrote to the Court on both parties' behalf and requested an additional extension to discovery.  Doc. 54.  Defendants explained that the case was "complicated" and deposing Anna Yu was difficult given her presence, and that of other witnesses, in China.  *Id.* at 1.  Counsel also explained that because Elva Green "performed many services" for Minnie Rose,

---

[5] Minnie Rose substituted its counsel on November 10, 2017.  Doc. 49.  And attorneys from the newfirm entered a notice of appearance on February 12, 2018.  Doc. 51.

"[h]undreds of invoices and at least 2000 emails may be involved" in discovery.  *Id.*
Nevertheless, defense counsel assured the Court that "Elva Green and Anna Yu [were]
prepared to follow the e-discovery rules and presume[d] opposing counsel [would] do the
same."  *Id.*

Discovery disputes arose on July 23, 2018, when defense counsel requested a
discovery conference to address Minnie Rose's failure to respond to Elva Green's
discovery demands.  Doc. 56 at 1.  Defense counsel explained that, at that point, "[t]here
was no meaningful disclosure" from Minnie Rose, as "Minnie Rose mostly 'disclosed'
Elva Green's documents" to Elva Green.  *Id.* at 3.  Defense counsel said that he needed
Minnie Rose's in-house communications and that Minnie Rose's counsel had "gone
silent."  *Id.* at 4.  The Court granted Defendants' request.  Doc. 57.[6]

On August 10, 2018, the case was stayed to allow Minnie Rose time to obtain
new counsel.  Doc. 61.  On November 1, 2018, the parties advised the Court on the status
of the case.  Doc. 64.  In that letter, defense counsel reported that the parties spoke by
phone and Minnie Rose's new counsel was having trouble downloading the electronically
stored information ("ESI") that Defendants provided her.  *Id.*  On November 16, 2018,
the parties reported that they had conferred over the completion of ESI discovery on
November 2, 2018, and that they agreed to exchange the requested ESI on November 19,
2018.  Doc. 65.  The parties thereafter had several conferences and resolved e-discovery
search terms and temporal parameters; they agreed that all outstanding documents would
be disclosed by January 25, 2019.  Doc. 67 at 1–2.  Once again, the parties informed the
Court that discovery was proceeding in a cooperative fashion:  they said in a letter that
the parties had "worked diligently and cooperatively to bring discovery to a close while

---

[6] Because of Minnie Rose's change of counsel and the parties' attempts to resolve discovery issues without
the Court's intervention, the discovery conference was not held until March 8, 2019.  Docs. 61, 68, 75.

protecting the rights of the parties." *Id.* at 2.  But in a November 20, 2018 letter, Minnie

Rose's counsel sent Defendants a list of outstanding discovery items, which included

Hang Seng account discovery.  Doc. 114-1.[7]

Defense counsel submitted a letter requesting a discovery conference on February

27, 2019.  Doc. 69 at 1.  Counsel asked the Court to order Minnie Rose to provide more

internal emails between Minnie Rose's officers and pay for Anna Yu's travel to New

York for her deposition.  Doc. 69 at 4, 5–8.  Prior to this disagreement, defense counsel

said he "placed 11,639 documents consisting of 45,727 pages, in a . . . discovery program

and retained a company to operate the program." *Id.* at 5.  Defense counsel also

explained that he "thought [the parties] were making progress on [] discovery." *Id.* at 1.

Defense counsel would not, however, provide Minnie Rose access to Defendants' ESI

without "corresponding and concurrent" ESI from Minnie Rose. *Id.* at 5.

On March 4, 2019, Minnie Rose's counsel responded to defense counsel's letter.

Doc. 71.  She opposed a discovery conference, arguing that the "massive effort" of

sorting through 136,000 discovery documents explained the delayed ESI disclosure, and

Anna Yu could not compel Minnie Rose to pay her deposition-related expenses. *Id.* at 4–

6.  Minnie Rose's counsel also mentioned that Defendants had not produced any

documents responsive to its initial requests. *Id.* at 1.  Moreover, Minnie Rose's counsel

asked that ESI discovery "pinpoint *particular* documents" for which metadata might be

needed. *Id.* at 4 (emphasis in original).  She did not mention outstanding Hang Seng

account discovery.

On March 8, 2019, the Court held a case management conference.  Doc. 75.  At

the conference, counsel for both parties agreed that discovery was progressing. *Id.* at 4,

---

[7] Minnie Rose's follow up request only covered item seven from its initial list—the request for "all bank statements, records, deposit slips, and canceled checks" related to the Hang Seng Bank account, not discovery related to "Masa Co.," which was item eight in its initial discovery demand.  Doc. 98-2 at 7; *accord* Doc. 114-1 at 2.

17.  The parties reported that Minnie Rose's counsel needed three weeks to review documents disclosed by Defendants and explained their plan to narrow search terms and ESI discovery.  *Id.* at 3.  The remainder of the conference concerned who would pay for Anna Yu's deposition-related travel expenses.  *Id.* at 15–16.

After the March 8, 2019 discovery conference, Minnie Rose and third-party Defendant Lisa Shaller-Goldberg changed counsel several times.  Minnie Rose obtained new counsel on July 3, 2019, with Holly Li filing a notice of appearance.  Doc. 72.  On August 2, 2019, third-party Defendant Lisa Shaller-Goldberg obtained new counsel. Doc. 73.  Minnie Rose's then counsel, Lisa Jones, moved to withdraw from the case on that same day.  Doc. 74.  And on August 28, 2019, Michael Maloney, Minnie Rose's current counsel, submitted a notice of appearance to the Court.  Doc. 78.

On November 5, 2020, the Court ordered the parties to provide an update on the case.  Doc. 82.  In response, the parties submitted a joint letter on November 19, 2020, explaining that they had engaged in inconclusive settlement negotiations.  Doc. 83 at 2. The parties also provided the Court with their discovery protocol and requested that the court extend the discovery deadlines.  Doc. 83 at 2; Doc. 83-1.  The court approved the protocol and extended the close of discovery to August 15, 2021.  Doc. 84 at 6; Doc. 85.[8]

Then, on January 15, 2021—almost fours years after its first discovery request— Minnie Rose's counsel sent defense counsel a letter demanding Hang Seng account-related communications.  Doc. 98-5 at 2.  Minnie Rose asserted that "Defendants failed to produce any communications between Defendants and Caili," which it thought were covered by the parties' discovery protocol.  *Id.*  Minnie Rose warned that if Defendants

---

[8] Defendants claim they provided 104 Hang Seng-related documents pursuant to this protocol and 1409 documents related to the Caili factory.  Doc. 106 at 2.  They do not explain, however, when such documents were provided.  *Id.*

did not comply, it might seek an order to compel discovery or ask the Court to impose sanctions.  *Id.* at 2–3.

Eight months later, on August 30, 2021, defense counsel replied to Minnie Rose's January 15, 2021 letter, where Minnie Rose demanded that Defendants provide it with communications relating to the Hang Seng account.  Doc. 98-6.  Defense counsel denied omitting communications between Defendants and the factories, citing the voluminous documents that Defendants had already disclosed.  *Id.* at 1–2.  He also rejected any assertion that Defendants failed to disclose altered invoices, writing, "there simply are none that we know of."  *Id.* at 2.

On January 4, 2022, defense counsel requested Hang Seng account documents directly from Hang Seng Bank.  Doc. 98-8.[9]  In response, Hang Seng said it could not provide the documents, as it had a policy of retaining documents for only seven years, and the requested documents were more than seven years old.  *Id.* at 2.  As a result, Minnie Rose filed the instant motion on April 5, 2022.  Doc. 108.

Pending before the Court is Minnie Rose motion to sanction Yu and Elva Green[10] for failing to preserve bank statements associated with an account Defendants used to transact business with some factories in China.  Specifically, Minnie Rose asks the Court to sanction Defendants by dismissing their counterclaims and third-party claims, granting Minnie Rose an adverse inference as to each of Defendants' denials and affirmative defenses in the answer and counterclaims, precluding Defendants from introducing

---

[9] Minnie Rose does not contend that Defendants possessed these records.  Docs. 110, 115.  Instead, Minnie Rose focuses on Defendants' failure to preserve the relevant records.  Doc. 110 at 10–11.

[10] In its initial brief, Minnie Rose asserted that "Defendants and their counsel [should] face sanctions."  Doc. 110 at 4.  But Minnie Rose does not mention sanctioning defense counsel again, and indeed omits any mention of defense counsel in its description of proposed remedies.  Doc. 110 at 16, 18; Doc. 115 at 5–6.  Accordingly, the Court will only decide whether sanctioning Defendants is appropriate.

evidence of any payments made by Defendants to the factories, and awarding Minnie Rose fees and costs.  Doc. 110 at 18.

## II.     LEGAL STANDARD

Under FRCP 37(e),[11] "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it," the ESI "cannot be restored or replaced through additional discovery," and "the party acted with the intent to deprive another party of the information's use in the litigation," the court may impose sanctions on the violating party.  FRCP 37(e)(2).[12]  Specifically, the court may "presume that the lost information was unfavorable to the party," "instruct the jury that it may or must presume the information was unfavorable to the party," or "dismiss the action or enter a default judgment."  FRCP 37(e)(2).  And in selecting the appropriate sanction, the Court may consider the full record in the case.  *Abreu v. City of New York*, 208 F.R.D. 526, 529 (S.D.N.Y. 2002).

---

[11] Minnie Rose moved for sanctions under FRCP 37(e)(2).  Doc. 108.  It bases this motion on Defendants' failure to provide it with Hang Seng bank statements.  Doc. 110 at 4.  Minnie Rose does not base its motion on Defendants' failure to provide emails or other documents related to the Hang Seng account, despite such information being the subject of its May 17, 2017 and January 15, 2021 demands.  *Id.* ("This motion is limited to a discrete issue:  should–and to what extent–Defendants and their counsel face sanctions for failing to preserve and produce bank statements central to the underlying dispute?"); Doc. 98-2 ¶ 3; Doc. 98-5.  Moreover, Defendants assume that FRCP 37(e) applies.  Doc. 111 at 5–7.  Accordingly, the Court only considers whether Defendants should be sanctioned for failing to preserve the Hang Seng account statements.

[12] While an earlier version of Rule 37(e) existed when this case began, Rule 86(a)(2) provides that the current version of the Rules applies to "proceedings after [the effective date of the amendment] in an action then pending unless (a) the Supreme Court specifies otherwise; or (b) the court determines that applying them in a particular action would be infeasible or work an injustice."  FRCP 86(a)(2).  When the current version of Rule 37(e) was enacted, the Supreme Court provided that "the foregoing amendment to Federal Rules of Civil Procedure shall take effect on December 1, 2015, and shall govern . . . insofar as just and practicable, all proceedings then pending."  *Int'l Bus. Machines Corp. v. Naganayagam*, No. 15 Civ. 7991 (NSR), 2017 WL 5633165, at *5 (S.D.N.Y. Nov. 21, 2017).  This action was pending at that time.  Doc. 1.  And applying the current version of Rule 37(e) is not "infeasible" and it would work no "injustice," as the amendment was in effect when the vast majority of the parties' conduct occurred.  FRCP 86(a)(2)(B).  Thus, the current version of Rule 37(e) governs this motion.

To prove a violation of Rule 37(e)(2), the moving party must first show that the nonmoving "party failed to take 'reasonable steps' to preserve [ESI] 'that should have been preserved in the anticipation or conduct of litigation.'" *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 494 (S.D.N.Y. 2022) (quoting FRCP 37(e)). "[T]he rule focuses on the common-law obligation to preserve in the anticipation or conduct of litigation," which attaches when "the party having control over the evidence" has "notice that the evidence is relevant to litigation." FRCP 37(e) Advisory Committee's note to 2015 Amendment; *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998); *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13 Civ. 2581 (PKC) (JLC), 2021 WL 4190628, at *15 (S.D.N.Y. Aug. 18, 2021) (the duty to preserve is also triggered by "possession" of the evidence).

Next, the moving party must show that the lost evidence cannot "be restored or replaced through additional discovery." FRCP 37(e). "[T]here can be no sanctions if the [evidence is] provided from another source." *Rosario v. City of New York*, No. 18 Civ. 4023 (LGS), 2022 WL 2965953, at *2 (S.D.N.Y. July 27, 2022). That is true even when the plaintiff acquires the evidence without the aid of the defendant. *Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*, No. 18 Civ. 1997 (JS) (AKT), 2021 WL 2788432, at *15 (E.D.N.Y. July 2, 2021) ("The record also demonstrates that Plaintiffs have obtained considerable discovery from alternative sources.").

Then, the moving party must show that "the party acted with the intent to deprive another party of the information's use in the litigation." FRCP 37(e)(2); *accord Keurig*, 341 F.R.D. at 496. This standard "is both stringent and specific." *Keurig*, 341 F.R.D. at 496; *Mule*, 2021 WL 2788432, at *12. There must be an "intent to deprive" the other party of evidence, not an intent to destroy the evidence for some other reason, such as to

destroy outdated documents.  *Leidig v. Buzzfeed, Inc.*, No. 16 Civ. 542 (VM) (GWG),

2017 WL 6512353, at *7 (S.D.N.Y. Dec. 19, 2017); *accord Charlestown Cap. Advisors,*

*LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 66 (S.D.N.Y. 2020) ("The intent

contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but

rather the intent to actually deprive another party of evidence.").  If an "intent to deprive"

is found, the moving party need not show prejudice, because "[s]ubdivision (e)(2) does

not include a requirement that the court find prejudice to the party deprived of the

information."  FRCP 37(e) Advisory Committee's note to 2015 Amendment.

## III.    DISCUSSION

Minnie Rose argues that FRCP 37(e)(2) was violated and that the Court should

dismiss Defendants' counterclaims and third-party claims, grant it an adverse inference,

and award it attorney's fees and costs.  Doc. 110 at 18.  Several elements of the 37(e)(2)

analysis are not in dispute.  Defendants do not contend that the Hang Seng account

statements are irrelevant to this case, that they controlled such records and bore a duty to

preserve them,[13] or that they failed to take reasonable steps to preserve that evidence.  *See*

---

[13] As discussed above, under the common law—which 37(e) follows—the duty to preserve evidence
attaches when a party has possession or control over the evidence at issue.  FRCP 37(e) Advisory
Committee's note to 2015 Amendment; *Charlestown Cap. Advisors*, 337 F.R.D. at 61 ("The duty to
preserve ESI imposed by Rule 37(e) incorporates th[e] longstanding common law duty." (quoting *Resnik v.
Coulson*, No. 17 Civ. 676 (PKC) (SMG), 2019 WL 1434051, at *7 (E.D.N.Y. Mar. 30, 2019)); *CBF
Industria de Gusa S/A*, 2021 WL 4190628, at *15; *see also United States v. Stein*, 488 F. Supp. 2d 350, 361
(S.D.N.Y. 2007) ("There is no hint in the history of [the FRCP] that the meaning of the phrase [possession,
custody, or control] differs depending upon which rule is in question.").  Minnie Rose argues that
Defendants had control over the Hang Seng bank account records. 110 at 8.  It cites Defendants' statement
that "Elva owned the account" as support for this proposition.  Doc. 98-6 at 3.  Some courts have held that
parties are in control of documents if the party seeking the evidence demonstrates that they have "the right,
authority, or practical ability to obtain the documents from a non-party to the action."  *Benthos Master
Fund, LTD v. Etra*, No. 20 Civ. 3384 (VEC) (KHP), 2022 WL 17090848, at *1 (S.D.N.Y. Nov. 21, 2022);
*Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146–47 (S.D.N.Y. 1997).
Because Minnie Rose established that Defendants own the Hang Seng account, Defendants had the "right"
or "practical ability" to obtain the statements.  *Benthos Master Fund, LTD*, 2022 WL 17090848, at *1;
*DeCastro v. Kavadia*, No. 12 Civ. 1386 (AT) (DF), 2014 WL 12983891, at *2, 8 (S.D.N.Y. Dec. 2, 2014)
(finding that the defendant had control over a bank account where the plaintiff demonstrated that the
defendant was the majority shareholder in the company that owned the account); *In re NTL, Inc. Sec. Litig.*,
244 F.R.D. 179, 195–96 (S.D.N.Y. 2007) (finding that the defendant had control over documents which it

Doc. 111.[14]  Accordingly, one question remains for the Court: whether Minnie Rose has demonstrated that Defendants acted intentionally in failing to provide Minnie Rose with the Hang Seng account discovery.

Four non-exclusive factors are relevant in determining if the nonmoving party acted to intentionally deprive the other of evidence in the litigation:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Charlestown Cap. Advisors, LLC*, 337 F.R.D. at 67 (quoting *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017)).  "Repeated failure" to preserve evidence—when on notice of the evidence's importance—is also indicative of an intent to deprive.  *Cruz v. G-Star Inc.*, No. 17 Civ. 7685 (PGG), 2019 WL 4805765, at *13 (S.D.N.Y. Sept. 30, 2019) (repeatedly failing to impose a litigation hold was evidence of an intent to deprive).  "[T]he reason for noncompliance," "the duration of . . . noncompliance," and "whether the non-compliant party had been warned of the

---

had the legal right to obtain from a third party), *aff'd sub nom. Gordon Partners v. Blumenthal*, No. 02 Civ. 7377 (LAK), 2007 WL 1518632 (S.D.N.Y. May 17, 2007).

[14] In any event, the Court finds that the records are relevant and Defendants did not reasonably act to preserve them.  Defendants are accused of fraud, and the allegations focus on whether Defendants, after receiving invoices from factories, wrongfully inflated the price of the services provided.  ¶¶ 3, 19–20. Defendants say no fraudulent invoices were made.  Doc. 19 at ¶ 3.  Hang Seng account documents might have provided evidence of the size of any discrepancies and when they existed, making them relevant to this case.  *Keurig*, 341 F.R.D. at 495.  Moreover, Defendants took no action until they directly requested the records from Hang Seng on January 4, 2022—more than four years after Minnie Rose's initial request for the records and almost seven years after the complaint was filed.  Doc. 98-8 at 1–2; Doc. 98-2 at 7. This inaction persisted even though Minnie Rose followed up in November 2018 about missing Hang Seng account documents.  Doc. 114-1 (letter from Minnie Rose mentioning Defendants' failure to provide Hang Seng account documents).  Defendants' inaction for seven years during active litigation is not a "reasonable effort[]" to preserve relevant evidence.  FRCP 37(e); *accord Moody*, 271 F. Supp. 3d at 428–29 (failing to confirm that important data had been uploaded was not a reasonable effort to preserve).

consequences of noncompliance" are also relevant.  *Vanceah v. Nat'l R.R. Passenger Corp.*, No. 18 Civ. 9418 (ER), 2022 WL 3030740, at *7 (S.D.N.Y. Aug. 1, 2022) (quoting *S.E.C. v. Setteducate*, 419 F. App'x 23, 24 (2d Cir. 2011)); *accord Charlestown Cap. Advisors, LLC*, 337 F.R.D. at 67 (deleting documents during a "routine purge" did not support finding of an intent to deprive).

Repeated failures to provide the evidence supports an intent to deprive.  *See Cruz*, 2019 WL 4805765, at *13.  Defendants' failure to produce any Hang Seng account records beyond one email for almost seven years therefore supports a showing of intent, particularly in light of Minnie Rose's follow up request for the outstanding records.  Doc. 114-1.  The Court agrees that such a limited production weighs in favor of Minnie Rose, particularly in light of Defendants' representations that they would provide "responsive, non-privileged" documents in their "possession, custody or control" to Minnie Rose.  Doc. 98-3 at 10–11.

However, the documents were lost because of Hang Seng's document preservation policy, not because of an intentional act by Defendants.  Doc. 98-8 at 1–2.  This is significant, as affirmative acts are central to this inquiry.  *See Charlestown Cap. Advisors, LLC*, 337 F.R.D. at 67.  For example, *In Re Gorsoan Limited* involved the destruction of a laptop by a defendant weeks before her deposition—"only weeks after she had refused to appear at her originally scheduled deposition."  No. 17 Civ. 5912 (RJS), 2020 WL 3172777, at *8–9 (S.D.N.Y. June 15, 2020).  Given the defendant's affirmative act and the timing, the court found it likely that "once she realized there was no way to avoid her testimonial obligations, [the defendant] intentionally destroyed her laptop to avoid answering questions about its contents."  *Id.*  That defendant also "repeatedly engaged in bad faith tactics throughout the[] proceedings," and an intent to deprive was inferred.  *Id.* at *9.

Unlike in *Gorsoan*, Minnie Rose does not contend that Defendants affirmatively took any acts to deprive Minnie Rose of the Hang Seng account statements. Doc. 110. That weighs heavily against an intent to deprive, as courts have routinely cited the nonmoving party's lack of affirmative action in denying FRCP 37(e)(2) motions for sanctions. *See Fashion Exch. LLC v. Hybrid Promotions*, LLC, No. 14 Civ. 1254 (SHS), 2021 WL 1172265, at *7 (S.D.N.Y. Mar. 29, 2021) ("[W]ithout evidence of affirmative conduct that Fashion Exchange deliberately disposed of its documents, . . . Rule 37(e)(2) sanctions were unwarranted."); *cf. Bursztein v. Best Buy Stores, L.P.*, No. 20 Civ. 00076 (AT) (KHP), 2021 WL 1961645, at *6 (S.D.N.Y. May 17, 2021) ("Defendants have thwarted and disrupted discovery throughout the life of this case. . . . Defendants repeatedly flouted their discovery obligations, failed to promptly communicate with opposing counsel, and repeatedly lodged baseless boilerplate objections to Plaintiff's discovery requests.").

Moreover, Defendants' cooperation with Minnie Rose in the discovery process weighs against finding an intent to deprive. *Cruz*, 2019 WL 4805765, at *13; *Karsch v. Blink Health Ltd.*, No. 17 Civ. 3880 (VM) (BCM), 2019 WL 2708125, at *25 (S.D.N.Y. June 20, 2019). In all of its many communications with the Court, Minnie Rose never mentioned that Defendants were refusing to provide it with the Hang Seng account statements. Instead, this issue was first brought to the Court's attention when Minnie Rose announced its intention to file a motion for sanctions. Doc. 97. And the parties represented to the Court—from the August 15, 2017 joint letter through their appearances at the March 8, 2019 case management conference—that discovery was proceeding cooperatively. Doc. 47 at 1 ("[C]ounsel for all parties have been diligent in advancing this litigation."); Doc. 52 at 1; Doc. 69 at 1 ("[W]e . . . thought we were making progress . . . ."); Doc. 75 at 4–6 ("I have been committed to moving this process through to

whatever conclusion there might be.").   Importantly, these statements were made *after* Minnie Rose demanded Hang Seng account discovery—and some were made after it followed up with Defendants on November 20, 2018.  Doc. 98-2 at 7; Doc. 98-3 at 10– 11; Doc. 114-1 at 2.[15]

Lastly, the limited probative value of the lost evidence weighs against an intent to deprive.  "'[R]elevant' in this context means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence."  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108–09 (2d Cir. 2002) (quoting Fed. R. Evid. 401).  Instead, it means "that the destroyed evidence would have been favorable to the movant."  *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 438 (S.D.N.Y. 2010); *see also Charlestown Cap. Advisors, LLC*, 337 F.R.D. at 67.  For example, in *Moody*, the lost evidence was "critical and irreplaceable" to the case, and it would have "conclusively" determined an issue in dispute.  271 F. Supp. 3d at 430.

Minnie Rose's failure to promptly insist on production of the Hang Seng documents suggests that they were not critical to its case.  Minnie Rose waited almost four years to ask Defendants for the Hang Seng account records.  Doc. 98-2; Doc. 98-5.[16] Its January 15, 2021 letter centered on the Hang Seng account—but even that was concerned with obtaining *emails* related to the account, rather than the relevant bank documents themselves.  Doc. 98-5 at 2.  Multiple discovery deadlines passed during those

---

[15] The drafters of Rule 37(e) "emphasize[d]" that courts should consider the relative sophistication of the parties and the resources available to them in considering 37(e)(2) sanctions. *CBF Industria de Gusa S/A*, 2021 WL 4190628, at \*15; *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15 Civ. 9363 (ALC) (DF), 2018 WL 1512055, at \*11 (S.D.N.Y. Mar. 12, 2018).  That Defendants are one individual and a closely-held corporation wholly-owned by that individual cautions against inferring an intent to deprive here, as they have fewer resources than a large corporation would.  *Lokai Holdings*, 2018 WL 1512055, at \*11 ("[T]he Coppocks run 'very small companies with very few employees,' and, therefore, should not held to the same standard as a large corporation with greater resources.").

[16] Minnie Rose did follow up on November 20, 2018.  Doc. 114-1.  But that letter was about *all* outstanding discovery, simply listing those items still outstanding from its initial demand and noting that documents had not been provided.  Doc. 114-1 at 2.  The demand did not single out Hang Seng documents.

years, *e.g.*, Docs. 55, 66, 68, yet Minnie Rose said nothing about extending the deadline so that it could get Hang Seng account documents.  And, as Defendants correctly argue, Minnie Rose could have subpoenaed Hang Seng Bank directly, without any involvement from Defendants.  Doc. 111 at 3.

Moreover, while it is true that Hang Seng account documents might have confirmed the existence of invoice discrepancies, that confirmation would only take Minnie Rose so far, as Defendants admitted in their answer that such discrepancies existed.  *See* Doc. 19 ¶ 20; Doc. 111 at 10.[17]  Instead, Defendants' argument against liability is that there is a "perfectly innocent and lawful explanation" for the discrepancies:  the business conventions of the Chinese garment industry.  Doc. 111 at 10.  For example, Shing Li Jun, a representative of the Caili factory, explained that the factories' services "were not complete[]" at the time when the initial invoices were created and that these invoices did not include the costs of yarn materials, labels, trims, and accessories.  Doc. 111-1 at 3.  Whether that is so remains to be seen.  But for these purposes, that the Hang Seng account documents may not be central to proving Minnie Rose's case weakens the motive Defendants would have to destroy them.  *See Mazzei v. Money Store*, 656 F. App'x 558, 560 (2d Cir. 2016) (affirming district court denial to infer intent where the lost evidence, according to the district court, "would not have made any difference" in the case); *Karsch*, 2019 WL 2708125, at *1, *22 (declining to infer intent where the nonmoving party "intentionally damaged the server containing one of his email accounts" but "spar[ed] his three other accounts, including the account he primarily used for communications relevant to th[e] action").

---

[17] Additionally, Minnie Rose already has evidence of invoice discrepancies.  The complaint shows several invoices that contain the same date but different prices.  Doc. 1.  And Defendants note that they provided 104 documents related to Hang Seng and 1409 documents associated with the Caili factory.  Doc. 106 at 2.

**IV.     CONCLUSION**

For the reasons stated above, Minnie's motion is DENIED.  The parties are directed to appear for a telephonic initial pretrial conference on April 7, 2023 at 10:30 a.m.  The parties are directed to dial (877) 411-9748 and to enter access code 3029857#. The Clerk of Court is respectfully directed to terminate Doc. 108.

It is SO ORDERED.


Dated:    March 7, 2023
          New York, New York

_____
          Edgardo Ramos, U.S.D.J

17