UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MINNIE ROSE, LLC,

                    Plaintiff,

        – against –

ANNA YU *a/k/a* ANNA YUE, ELVA GREEN
CLOTHING COMPANY LTD *a/k/a* ELVA
GREEN CLOTHING (HK) CO., LTD., *and*
JOHN DOES 1-10,

                    Defendants.

-----------------------------------------------------------

ELVA GREEN CLOTHING (HK) CO., LTD
*a/k/a* ELVA GREEN CLOTHING COMPANY
LTD,

              Third-Party Plaintiff,

        -*against*-

LISA SHALLER GOLDBERG *and* JOHN
DOES 1-10,

              Third-Party Defendants

**OPINION & ORDER**

15-cv-1923 (ER)

RAMOS, D.J.:

        Minnie Rose, LLC, brought this action against Elva Green Clothing Company

Ltd. ("Elva Green") and its chief executive officer ("CEO"), Anna Yu, alleging fraudulent

misrepresentation and unjust enrichment.  Doc. 1.  Yu and Elva Green ("Defendants")

counterclaimed against Minnie Rose (Doc. 39) and brought a third-party complaint

against its CEO, Lisa Shaller Goldberg (with Minnie Rose, "Plaintiffs") alleging unjust

enrichment and fraud (Doc. 40).

        Before the Court are (1) Plaintiffs' renewed motions for sanctions pursuant to

Federal Rule of Civil Procedure 37(e)(2) and to preclude the deposition of Shaller

Goldberg (Doc. 127) and (2) Defendants' second motion to dismiss and for summary judgment (Doc. 135). For the reasons set forth below, the Court will not grant Plaintiffs' motion for sanctions, nor Defendants' motions for dismissal or summary judgment, but the Court will preclude Defendants from now deposing Shaller Goldberg.

## I.    BACKGROUND

### A.  Factual Background

Minnie Rose is a New York corporation that designs, manufactures, and sells women's contemporary clothing. Doc. 1 (Compl) ¶ 1. In 2009, Minnie Rose engaged Elva Green, a Hong Kong-based corporation, through its officer, Anna Yu, to become Minnie Rose's primary overseas sourcing agent. *Id.* ¶¶ 1–2, 10, 12, 15. In that capacity, Defendants selected factories to manufacture Minnie Rose's clothing, supervised production, negotiated prices, and coordinated Minnie Rose's payment of the factories' invoices. *Id.* ¶¶ 2, 13. In exchange for its services, Minnie Rose agreed to pay Defendants a commission equal to 10% of the Free-on-Board ("FOB") cost of each item produced and shipped to it. *Id.* ¶ 13. Eventually, Minnie Rose began using only factories recommended by Defendants to produce its clothing, all of which were located in China. *Id.* ¶ 12. These factories would send invoices to Defendants, and Defendants would send the invoices to Minnie Rose. *Id.* ¶ 15. This process continued until the summer of 2014. *Id.* ¶ 3; Doc. 13 (Shaller-Goldberg Decl.) ¶ 10.

Minnie Rose alleges that it learned that Defendants were defrauding it throughout their business relationship when it received real, unaltered invoices from Defendants in the summer of 2014. Doc. 13 ¶ 10. During its five-year relationship with Defendants, Minnie Rose claims that it received invoices which inflated the actual cost of services rendered by Chinese factories. ¶ 8. Minnie Rose alleges that Defendants billed for a higher price than what was due to the factories, pocketing the difference. Doc. 1 ¶¶ 3–4, 16, 20. As a consequence of inflating the cost of each item, Defendants also artificially inflated the commission they charged Minnie Rose. *Id.* ¶¶ 4, 23. Moreover, Minnie Rose

claims that Defendants altered the payment instructions on the invoices from Tonglu Caili Garment Co. ("Caili"), one of the factories Defendants engaged to manufacture Minnie Rose's products. *Id.* ¶ 19.  Minnie Rose claims that the Caili invoices directed payment to a bank account controlled by Defendants at Hang Seng Bank Limited ("Hang Seng") instead of the factory—the latter of which was listed on the original invoice. *Id.* ¶ 19; Doc. 98 ¶ 9.

Minnie Rose also alleges that Defendants fraudulently represented that they were required to pay out-of-pocket up-front payments to the Shanghai Dongfang Wool Knitting Co., Ltd Factory for various supplies, for which Defendants then demanded reimbursement.  Doc. 1 ¶¶ 21–22.  However, Defendants never made any such up-front payments and instead kept the purported reimbursement payments. *Id.* ¶ 22.  Over the course of the relationship, Minnie Rose claims to have paid Defendants $1,400,000 in "legitimate commissions" and to have suffered damages in the minimum amount of $2,200,000 as a result of the fraud. Doc. 1 ¶ 33, 38, 43; Doc. 13 ¶ 8.

### B.  Procedural History

Minnie Rose filed its complaint on March 13, 2015, bringing claims for fraudulent misrepresentation and unjust enrichment.  Doc. 1.  On May 21, 2015, Defendants moved to dismiss the complaint for failure to allege diversity jurisdiction, failure to state a claim, and because the claims were barred by the statute of frauds, statute of limitations, and laches.  Doc. 9.  On March 11, 2016, the Court denied Defendants' motion.  Doc. 18.  The Court specifically held that Plaintiffs had sufficiently pled claims for fraudulent misrepresentation and unjust enrichment, rejecting Defendants' arguments that Plaintiffs did not satisfy the heightened pleading requirement for fraud and that the existence of a valid contract precluded a claim for unjust enrichment. *Id.* at 16–25.

On May 2, 2016, Defendants answered the complaint and counterclaimed against Minnie Rose for breach of contract, unjust enrichment, account stated, fraud, and fraudulent conveyance.  Doc. 19.  Defendants also filed a third-party complaint against

Shaller Goldberg on May 19, 2016 for unjust enrichment, fraud, and fraudulent conveyance (Doc. 32), which they amended on March 10, 2017 (Doc. 40).  Defendants also amended their answer on March 10, 2017, adding a counterclaim for goods sold and delivered.[1]  Doc. 39.  Defendants deny that they created any fraudulent invoices or otherwise kept any money to which they were not entitled; rather, Defendants allege that, beginning in about 2013, Minnie Rose and Shaller Goldberg (1) repeatedly placed orders with Elva Green but failed to pay the full amounts owed and (2) directly contacted the Chinese factories to circumvent Elva Green and deprive it of commissions, thereby systematically defrauding Elva Green.  *See generally* Docs. 39, 40.  Accordingly, Defendant allege they are therefore entitled to $1,700,000 in damages.  Doc. 39 ¶ 95, 100, 105, 122; Doc. 40 ¶ 35.

Minnie Rose answered the counterclaims on March 24, 2017 (Doc. 42), and Shaller Goldberg answered the third-party complaint the same day (Doc. 43).

A discovery plan was entered on February 17, 2017, which stated that discovery was to close by September 29, 2017.  Doc. 38.  The Court thereafter granted a dozen requests for discovery extensions.  Docs. 48, 53, 55, 66, 68, 75, 85, 87, 89, 94, 96, 100.

On April 5, 2022, Plaintiffs moved for sanctions against Defendants pursuant to Federal Rule of Civil Procedure 37(e) for failure to preserve bank statements associated with an account Defendants used to transact business with certain factories in China,[2] notwithstanding that such information would be directly responsive to requests 7 and 8 of their initial discovery demand ("Requests 7 and 8").  Doc. 108.  The Court denied the motion on March 7, 2023 on the basis that, although it was undisputed that the records

---

[1] Defendants purported in the amended answer to the complaint that this sixth cause of action for goods sold and delivered was against both Minnie Rose and Shaller Goldberg, notwithstanding that Shaller Goldberg is not a plaintiff in the complaint.  Doc. 39 ¶¶ 123–26.  But, although Defendants also amended the third-party complaint against Shaller Goldberg, they did not assert the goods sold and delivered claim against Shaller Goldberg.  *See* Doc. 40.  Accordingly, the clams for goods sold and delivered is properly brought only against Minnie Rose, not Shaller Goldberg.

[2] The account bore the name "Masa Co." and was located at Hang Seng.  Doc. 118 at 3.

were relevant and Defendants failed to take reasonable steps to preserve the evidence, Defendants had not acted intentionally in failing to provide the discovery. Doc. 118. The Court reasoned that the records were lost because of the bank's document preservation policies, and Minnie Rose had not alleged Defendants took any affirmative acts to deprive Minnie Rose of the account statements. *Id.* at 13–14. Moreover, Minnie Rose's failure to promptly insist on production of the account statements and instead wait four years to request their production, after multiple discovery deadlines passed, "suggest[ed] that they were not critical to the case" and "weaken[ed] the motive Defendants would have to destroy" the documents. *Id.* at 15–16.

At a case management conference one month later, on April 7, 2023, the Court specified that its sanctions decision was without prejudice, and the Court would not preclude Plaintiffs from making a subsequent motion if appropriate. Doc. 123 at 2:24–3:2. At that conference, the parties represented that only two depositions, those of Yu and Shaller Goldberg,[3] remained, and all other discovery was complete. Doc. 123 at 7:5–8:5. The Court scheduled a subsequent conference for June 14, 2023, and directed the parties "to endeavor to complete the depositions" within sixty days (June 6, 2023), reiterating the parties needed to "make every effort to" complete depositions before the subsequent conference. *Id.* at 8:18–21; 9:10–25.

At the subsequent June 14, 2023 conference, the parties represented that Yu's deposition had been taken June 12 and 13, 2023, but Shaller Goldberg had still not been deposed because Defendants did not serve defense counsel with a notice of deposition until June 6, 2023 and requested a deposition date in July 2023, *after* the June 6 discovery

---

[3] Yu's deposition had been logistically difficult to arrange because her counsel did not know if she was in Hong Kong or China, and Chinese law prohibited deposing her while in China for a U.S. case, so she needed to be in Hong Kong for the deposition, even if taken by Zoom. Doc. 123 at 5:4–17, 6:15–18. Shaller Goldberg's deposition would be comparatively straightforward because she was in New York, and the parties agreed to a Zoom deposition, so no travel was required of either the witness or any lawyers. *Id.* at 7:22–8:5.

cutoff.[4]  Doc. 130 at 2:23–3:6; 6:10–7:5.  Defendants argued that the Court only "ordered us to endeavor" to complete discovery by June 6, 2023, and they had done so by virtue of Yu's deposition and their noticing of Shaller Goldberg's.  *Id.* at 7:21–22.  The Court emphasized that "the tenor of the last [conference] . . . was attempting to express the Court's frustration with the parties, and with [Defendants] in particular, for not moving this case along," and Defendants' choice to wait to notice Shaller Goldberg's deposition until the week of the conference "[were] not what endeavor means."  *Id.* at 7:6–12, 7:23–8:2.  The Court emphasized that the parties should have immediately begun making plans to complete the remaining depositions after the April conference, but Defendants waited almost two months.  *Id.* at 10:22–24.

Plaintiffs sought leave to move to preclude Defendants from deposing Shaller Goldberg on the basis that Defendants failed to act diligently in noticing the deposition.  *Id.* at 3:4–6, 12:5–7.  Plaintiffs also sought to file a renewed motion for sanctions for spoliation.  *Id.* at 3:7–10, 12:5–7.  The Court granted Plaintiffs leave to so move by June 30, 2023, and it also granted Defendants' request to move for "judgment on the counterclaim for goods sold and delivered" by the same date.  *Id.* at 12:2–13:20.

On June 30, 2023, the parties filed a purported stipulation to extend Defendants' deadline to file their motion for judgment on the pleadings by two weeks.  Doc. 125.  Although the Court granted the two-week adjournment the same day, the Court noted that the request was improper in several respects, not the least of which is that "parties may not stipulate to noncompliance with or modification of a court order."  Doc. 126.  The Court also cautioned:

> Moreover, the Court notes that it has now repeatedly directed the parties, including at multiple status conferences to move the case forward expeditiously.  It now repeats those directions in writing.  This case is eight years old, but—unjustifiably—discovery is not yet

---

[4] The Court and the parties treated June 14, 2023 as the discovery cut-off, although the Court's sixty day deadline would have run June 6, 2023.  For purposes of the instant Opinion, the result would not change regardless if discovery closed June 6, 2023 or June 14, 2023.

complete.  Accordingly, **no further extensions will be granted except for good cause shown**.

*Id.* at 2 (emphasis in original).

Plaintiffs filed a renewed motion for sanctions pursuant to Federal Rule of Civil Procedure 37(e) and to preclude Plaintiff's deposition on June 30, 2023.  Doc. 127.  Defendants filed a motion on July 16, 2023 that requested the Court to:  (1) "[g]rant summary judgment to Defendants' [sic] for goods sold and delivered for $1,309,857.98"; (2) dismiss Minnie Rose's "case for fraud."; (3) dismiss Minnie Rose's motion for sanctions; (4) dismiss Minnie Rose's "case for failure to state and support a claim for fraud and bad faith"; and (5) "[g]rant Defendants' motion to dismiss [Minnie Rose's] case as having been brought in bad faith."  Doc. 135.

## II.    THE MOTION FOR RULE 37(e) SANCTIONS IS DENIED

Plaintiffs argue Defendants committed spoliation in that they failed to preserve and willfully destroyed bank documents that would have been responsive to Requests 7 and 8 of their initial discovery demands.[5]  Doc. 129 at 14–24.  They therefore request that the Court "harshly sanction" Defendants, namely by (1) striking Defendants' affirmative defenses, (2) precluding Defendants from introducing evidence of payments Defendants allegedly made to the factories, and (3) imposing an adverse inference against Defendants

---

[5] Plaintiffs' arguments with respect to Rule 37(e) sanctions appear to focus on the destroyed bank documents.  Plaintiffs additionally, however, allege that Defendants violated their discovery obligations by failing to produce any records with respect to Request 7 and only one email between Plaintiffs and Defendants in response to Request 8, and by failing to produce any copies of the original factory invoices, receipts, orders, or invoices in response to fourteen other requests.  Doc. 129 at 9.  Plaintiffs have never moved to compel production of these or any other documents.

Plaintiffs further assert that Yu admitted at her deposition that she willfully destroyed some of those documents.  *Id.* at 12–13; Doc. 140 at 11.  But the testimony Plaintiffs cite suggests only that Yu, perhaps intentionally so that they could not be discovered, did not keep records of the underlying transactions and destroyed relevant invoices and records during the course of her business—*i.e.*, long before the instant litigation or any threat thereof.  That does not necessarily suggest spoliation or misconduct during litigation designed to impede Plaintiffs' access to discovery.

Because Plaintiffs do not appear to move for sanctions on these grounds, however, the Court need not decide the issue.

that the missing and spoliated evidence would have supported Plaintiffs' allegations.  *Id.* at 22–23.  They also seek attorneys' fees and costs.  *Id.* at 24.

Defendants oppose on the basis that the Court's prior sanctions decision is the law of the case.  Doc. 138 at 5.  Defendants further assert that the database containing all produced discovery in the instant litigation reveals that, of the 27,103 documents (totaling 102,357 pages) of discovery exchanged, a search for "MASA" (the name on the bank account) produces 105 documents totaling 4,611 pages.  *Id.* at 5–6.  And a search of "Caili" through the database produces 1,458 documents totaling 14,278 pages.  *Id.*

Plaintiffs reply that "[t]he quantity [of] records produced is not a defense to spoliation."  Doc. 140 at 12.  Moreover, the law of the case does not bar the renewed motion for sanctions where the prior decision was without prejudice.  *Id.*

### A.  Legal Standard

Under Rule 37(e),[6] "[i]f electronically stored information [("ESI")] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it," the ESI "cannot be restored or replaced through additional discovery," and "the party acted with the intent to deprive another party of the information's use in the litigation," the Court may impose sanctions on the violating party.  Specifically, the Court may "presume that the lost information was unfavorable to the party," "instruct the jury that it may or must presume the information was unfavorable to the party," or "dismiss the action or enter a default judgment."  *Id.*

---

[6] While an earlier version of Rule 37(e) existed when this case began, Rule 86(a)(2) provides that the current version of the Rules applies to "proceedings after [the effective date of the amendment] in an action then pending unless (A) the Supreme Court specifies otherwise; or (B) the court determines that applying them in a particular action would be infeasible or work an injustice."  When the current version of Rule 37(e) was enacted, the Supreme Court provided that "the foregoing amendment to Federal Rules of Civil Procedure shall take effect on December 1, 2015, and shall govern . . . insofar as just and practicable, all proceedings then pending."  *Int'l Bus. Machines Corp. v. Naganayagam*, No. 15-cv-7991 (NSR), 2017 WL 5633165, at *5 (S.D.N.Y. Nov. 21, 2017) (alteration in original).  This action was pending at that time. Doc. 1.  And applying the current version of Rule 37(e) is not "infeasible," and it would work no "injustice," as the amendment was in effect throughout the vast majority of the parties' litigation.  Fed. R. Civ. P. 86(a)(2)(B).  Thus, as with the prior motion for sanctions (Doc. 118 at 9 n.12), the current version of Rule 37(e) governs this motion.

And in selecting the appropriate sanction, the Court may consider the full record in the case. *Abreu v. City of New York*, 208 F.R.D. 526, 529 (S.D.N.Y. 2002).

To prove a violation of Rule 37(e)(2), the moving party must first show that the nonmoving "party failed to take 'reasonable steps' to preserve [ESI] 'that should have been preserved in the anticipation or conduct of litigation.'" *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 494 (S.D.N.Y. 2022) (alteration in original) (quoting Fed. R. Civ. P. 37(e)). "[T]he rule focuses on the common-law obligation to preserve in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e) Advisory Committee's Note to 2015 Amendment. The obligation arises when "the party having control over the evidence" has "notice that the evidence is relevant to litigation." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998); *see also CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13-cv-2581 (PKC), 2021 WL 4190628, at *15 (S.D.N.Y. Aug. 18, 2021) (noting that the duty to preserve is also triggered by "possession" of the evidence).

Next, the moving party must show that the lost evidence cannot "be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). "[T]here can be no sanctions if the [evidence is] provided from another source." *Rosario v. City of New York*, No. 18-cv-4023 (LGS), 2022 WL 2965953, at *2 (S.D.N.Y. July 27, 2022) (citation omitted). That is true even when the plaintiff acquires the evidence without the aid of the defendant. *Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*, No. 18-cv-1997 (JS), 2021 WL 2788432, at *15 (E.D.N.Y. July 2, 2021) ("The record also demonstrates that Plaintiffs have obtained considerable discovery from alternative sources.").

Then, the moving party must show that "the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2); *accord Keurig*, 341 F.R.D. at 496. This standard "is both stringent and specific." *Keurig*, 341 F.R.D. at 496 (citation omitted); *accord Mule*, 2021 WL 2788432, at *12. There must be an "intent to deprive" the other party of evidence, not an intent to destroy the evidence

for some other reason, such as to destroy outdated documents. *Leidig v. Buzzfeed, Inc.*, No. 16-cv-542 (VM) (GWG), 2017 WL 6512353, at *7 (S.D.N.Y. Dec. 19, 2017); *see also Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 66 (S.D.N.Y. 2020) ("The intent contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." (citation omitted)).  If an "intent to deprive" is found, the moving party need not show prejudice, because "[s]ubdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information."  Fed. R. Civ. P. 37(e) Advisory Committee's Note to 2015 Amendment.

## B.  Discussion

Plaintiffs are correct that the law of the case doctrine does not bar Plaintiffs from renewing their motion, *see Colvin v. Keen*, 900 F.3d 63, 67–68 (2d Cir. 2018), particularly as the Court expressly held that it would allow Plaintiffs to again move for sanctions in the appropriate circumstances (Doc. 123 at 2:24–3:2).  But the Court intended by that decision only to allow Plaintiffs to so move if Defendants committed additional sanctionable conduct or Plaintiffs otherwise had another basis upon which to move for sanctions.  The Court did not intend for Plaintiffs to re-argue that Defendants should be sanctioned for failing to preserve the Masa Co. account's bank statements from Hang Seng (which would have been responsive to Requests 7 and 8)—the very documents that were the subject of the prior Rule 37 motion.  And Plaintiffs offer no new evidence to alter the Court's rationale—or result—in its prior decision.  Even if the Court were to consider Plaintiff's allegations that Yu destroyed business records and that Defendants may not have produced the entire universe of responsive documents, it is not convinced that would be sufficient to establish a pattern of willful destruction, bad faith, or contempt for Defendants' discovery obligations so as to change the result of Plaintiffs' renewed motion for sanctions.  The instant motion for sanctions is therefore denied.

### III.   DEFENDANTS MAY NOT NOW DEPOSE SHALLER GOLDBERG

Plaintiffs ask that the Court enter an order precluding Defendants from taking Shaller Goldberg's deposition on the basis that Defendants failed to act with diligence to take her deposition before the discovery cutoff.  Doc. 129 at 24–25.  Plaintiffs argue that any prejudice Defendants would suffer from preclusion "is the result of their own delay and dilatory tactics" in failing to notice the deposition until the very day of the discovery cut-off, even after Plaintiffs reminded Defendants of the deadline on May 22, 2023 when they confirmed the Yu deposition.  *Id.* at 25.  Moreover, Plaintiffs contend there would be little if any prejudice in any event because of the level of detail provided in Plaintiffs' interrogatory responses.  *Id.*

The only mention of depositions Defendants make in their responsive papers is to state:

> Defendants [sic] notice of deposition Minnie Rose and Lisa Shaller is attached.  Exhibit B.  The questions attached to that notice of deposition it [sic] go to shore up Defendants claim for goods sold and delivered but not paid for.  Plaintiff's attempt to cancel a deposition of Plaintiff is particularly extraordinary since all that would happen is that those questions would be asked on trial.

Doc. 138 at 6–7.

The decision to reopen discovery is within the Court's discretion.  *Ciaramella v. Zucker*, No. 18-cv-6945 (MKV) (SLC), 2021 U.S. Dist. LEXIS 150012, at *2 (S.D.N.Y. Aug. 10, 2021).  "Discovery deadlines may only be modified for good cause, and the determination of whether there is 'good cause' depends on the diligence of the party seeking to modify the scheduling order."  *Id.* (citing Fed. R. Civ. P. 16(b)(4); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)).  Where there has already been an "adequate opportunity for discovery," the Court is less likely to grant an application to reopen.  *Id.* at *3 (citing *Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511–12 (2d Cir. 1989)).

First, the Court notes that Defendants have not moved to reopen discovery, nor moved to compel Shaller Goldberg's (post-discovery) deposition, and instead seem to blithely assume they are entitled to depose her.  They are not.  Indeed, even if Defendants had so moved, they offer the Court no reason at all to grant the motion (*see* Doc. 138 at 7), let alone one rising to the level of "good cause," as is required by case law (*see Ciaramella*, 2021 U.S. Dist. LEXIS 150012, at *2–3) and by this Court (*see* Doc. 126 at 2).  The Court already repeatedly warned the parties at conferences and in writing that they needed to complete discovery, and the Court would not countenance further extensions of the *already eight years* of discovery except for good cause shown.  *See, e.g.*, Doc. 123 at 8:18–21; 9:10–25; Doc. 126 at 2; Doc. 130 at 7:6–12, 7:23–8:2, 10:22–24.  The parties thus had ample warning that discovery needed to be completed, and an unjustifiably long period of time to do so.  In other words, Defendants had a more than "adequate opportunity for discovery."  *See Trebor Sportswear Co.*, 865 F.2d at 511–12.  That Defendants attempted to notice Shaller Goldberg's deposition right at the close of discovery does not change the result when they made no attempt to actually take the deposition before the close of discovery.  *See Media Glow Digit., LLC v. Panasonic Corp.*, No. 16-cv-7907 (PGG), 2022 U.S. Dist. LEXIS 143946, at *6 (S.D.N.Y. Aug. 11, 2022) (holding that, where a party "had every opportunity to seek the deposition . . . during the discovery period. . . . [and] instead made a strategic decision not to do so," or a party "ha[d] not explained why it failed to depose [a] witness during the six years that this case has been pending," the party would not be granted permission to depose that witness after the close of discovery (quoting *George v. Ford Motor Co.*, No. 03-cv7643 (GEL), 2007 U.S. Dist. LEXIS 61453, at *32 (S.D.N.Y. Aug. 16, 2007)); *see also George*, 2007 U.S. Dist. LEXIS 61453, at *31 (holding that discovery and depositions "may not be conducted after the close of discovery absent good cause to modify [the scheduling] order").  And it is also no defense that the anticipated deposition questions "would be asked on trial."  *See* Doc. 138 at 7.  That merely means that the deposition

testimony would be relevant, but even "highly relevant" information may be precluded. *See New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 309 (S.D.N.Y. 2015). Accordingly, because of Defendants' dilatory conduct, the Court will not compel Shaller Goldberg to sit for a deposition now, months after the close of eight years of discovery.

## IV.   THE COURT WILL NOT GRANT SUMMARY JUDGMENT

Defendants seek partial summary judgment as to their claim for goods sold and delivered.  Doc. 135 at 2.  In support, Defendants submit "an exhibit outlining the approximately 121 invoices served on [Minnie Rose] from late 2013 to August 2014 when Elva Green refused to go forward without timely payment and orders for substantial amounts."  Doc. 138 at 7 (citing Doc. 137-2).  Defendants argue that the parties had a contract of sale, pursuant to NY UCC § 2-709(1)(a), because both Minnie Rose and Elva Green were merchants, Minnie Rose accepted the goods, Elva Green emailed the invoices confirming the sale, and Minnie Rose made no objections.  *Id.* at 8. And Minnie Rose breached the contracts by failing to pay.  *Id.*  In a paragraph entitled "Case Law," Defendants merely list two cases—*H. Daya International Co., Ltd. v. Habib Arazi and Princess, Inc.*, 348 F. Supp. 3d 304 (S.D.N.Y. 2018) and *Nouveau Elevator Indus., Inc. v. Tracey Towers Hos. Co.*, 95 A.D.3d 616 (N.Y. App. Div. 1st Dep't 2012)— but provide no analysis as to how the Court should apply them.  *Id.* at 7.  Based on the two cases, Defendants simply conclude that "Elva Green is entitled to judgment for goods sold and delivered and unpaid for."  *Id.*

Defendants submitted no Rule 56.1 Statement of Material Facts.  On this basis alone the motion for summary judgment may be denied.  Local Civil R. 56.1(a) ("Failure to submit [a Rule 56.1 Statement of Material Facts] may constitute grounds for denial of the motion [for summary judgment].").

In opposition, Plaintiffs argue that Defendants' motion papers are defective for failing to submit a Rule 56.1 statement and because they fail to satisfy their burden to submit sufficient admissible evidence to establish that no genuine issue of material fact

exists such that Defendants are entitled to judgment as a matter of law.  Doc. 140 at 7.
Plaintiffs also argue that summary judgment cannot be granted on Defendants'
counterclaim for goods sold and delivered when there are unresolved factual issues
concerning Plaintiffs' claims that the invoices were artificially inflated, as demonstrated
by the exhibits they submit to the Court.  *Id.* at 8–9 (citing *Created Gemstones, Inc. v.
Union Carbide Corp.*, 47 N.Y. 2d 250, 252–53 (N.Y. 1979)).  Further, Defendants
submitted no evidence that the goods for which they seek payment were shipped to
Minnie Rose, nor that Minnie Rose accepted them, relying instead on bald assertions
without any proof.  *Id.* at 10.  And Plaintiffs argue the list of invoices upon which
Defendants rely is inadmissible.  *Id.* at 10–11.

On reply, Defendants ask the Court to excuse Defendants' failure to comply with
the Local Rule 56.1.  Doc. 143 at 8–9 (citing *Hardnett-Majette v. AMTRAK*, No. 16-cv-
389 (LEK), 2017 U.S. Dist. LEXIS 101623, at *7 (N.D.N.Y. June 30, 2017)).[7]  They also
argue that *Created Gemstones* applies only where a plaintiff raises a breach of contract
claim, but Plaintiffs bring no such claim here.  *Id.* at 9–11.  Defendants also argue that
Plaintiffs offer no more than "innuendo" to assert that there exist any factual issues with
respect to the invoices, which is insufficient in the face of Yu's affidavit that Minnie Rose
placed the orders, the goods were shipped, and no complaints were made to the invoices;
but Minnie Rose did not pay for the goods.  *Id.* at 11–12 (citing Doc. 137).  They also
argue that the invoices are admissible business records.  *Id.* at 13–15.  Defendants also
point the Court to an affidavit and email exhibit submitted in support of their first motion
to dismiss on July 2, 2015 as evidence that goods had been shipped to Minnie Rose and
payments were outstanding.  *Id.* at 12 (citing Doc. 17).  Consequently, Defendants argue

---

[7] In that case, the district court held, in relevant part, that it "could grant summary judgment based on
[p]laintiff's failure to comply with" the local rule requiring her to file a statement of material facts, but it
had discretion to excuse her failure to comply, and would exercise such discretion here because
"[p]laintiff's oversight appears to be in good faith as evidenced by the letter she filed with the Court
clarifying the disputed facts in this case." *Hardnett-Majette*, 2017 U.S. Dist. LEXIS 101623, at *6–7.

that "[t]he evidence establishes that (1) Plaintiffs ordered garments from Defendants; (2) Defendants sent Plaintiffs the garments and invoiced them accordingly; and (3) Defendants accepted the garments and failed to pay the invoices." *Id.* at 13.

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free School Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might "affect the outcome of the litigation under the governing law." *Id.* (quoting *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)). The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Medical Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)). In opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita*

*Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To defeat summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

New arguments first raised in reply papers are not a proper basis for granting summary judgment and should not be considered.  *United States v. E. River Hous. Corp.*, 90 F. Supp. 3d 118, 162 (S.D.N.Y. 2015) (collecting cases); *see also Rowley v. City of N.Y.*, No. 00-cv-1793 (DAB), 2005 U.S. Dist. LEXIS 22241, at *13 (S.D.N.Y. Sep. 29, 2005) ("This Circuit has made clear it disfavors new issues being raised in reply papers.").

**B.  Discussion**

First, the Court will not excuse Defendants' failure to comply with the Local Rules.  The Court has repeatedly held litigants to their obligations to comply with Local Rule 56.1—and it will continue to do so.  *See, e.g.*, *Sharbat v. Iovance Biotherapeutics, Inc.*, No. 20-cv-1391 (ER), 2023 U.S. Dist. LEXIS 192634, at *2 n.1 (S.D.N.Y. Oct. 26, 2023); *Ebert v. Holiday Inn*, No. 11-cv-4102 (ER), 2014 U.S. Dist. LEXIS 12368, at *1-6 (S.D.N.Y. Jan. 31, 2014); *Van Dunk v. Brower*, No. 11-cv-4564 (ER), 2013 U.S. Dist. LEXIS 160667, at *3 n.3 (S.D.N.Y. Nov. 7, 2013); *Pape v. Bd. of Educ.*, No. 07-cv-8828 (ER), 2013 U.S. Dist. LEXIS 106471, at *1 n.2 (S.D.N.Y. July 28, 2013); *Hoefer v. Bd. of Educ. of the Enlarged City Sch. Dist. of Middletown*, No. 10-cv-3244 (ER), 2013 U.S. Dist. LEXIS 4095, at *2 n.3 (S.D.N.Y. Jan. 9, 2013); *Knox v. Cnty. of Putnam*, No. 10-cv-1671 (ER), 2012 U.S. Dist. LEXIS 139586, at *2 n.3 (S.D.N.Y. Sep. 27, 2012); *Risco v. McHugh*, 868 F. Supp. 2d 75, 85 n.2 (S.D.N.Y. 2012).  Moreover, the sole case that Defendants cite in support of their request is a case from the Northern District of New York in which the plaintiff had at least attempted to comply with the local rule by filing a letter "clarifying the disputed facts in th[e] case" in lieu of the statement of material facts required by that district's Local Rule 7.1(a)(3).  *Hardnett-Majette*, 2017 U.S. Dist. LEXIS

101623, at *7.  In comparison, Defendants here made no attempt to comply *in any way* with the requirement for statement of material facts.  This alone is reason to deny Defendants' motion for summary judgment.  *See* Local Civil R. 56.1(a).

Defendants' arguments are also fatally deficient insofar as they raise their arguments primarily on reply.  In their moving papers, Defendants do not list the elements of a goods sold and delivered claim, let alone argue that each has been satisfied with citations to admissible evidence.  *See* Docs. 136, 138.  Only on reply do Defendants attempt—albeit conclusorily—to argue that their evidence establishes each element of the claim.  *See* Doc. 143 at 13.  That is not enough.  *See E. River Hous. Corp.*, 90 F. Supp. 3d at 162; *Rowley*, 2005 U.S. Dist. LEXIS 22241, at *13.

Even if the Court overlooked Defendants' failures to properly submit their arguments, however, Defendants have plainly fallen far short of their burden under Rule 56 to submit admissible evidence sufficient to establish that there exists no genuine dispute of material fact.  Defendants point the Court only to their list of 99 invoices[8] emailed to Minnie Rose but purportedly unpaid (Doc. 137-2); Yu's July 1, 2015 and July 22, 2023[9] affidavits (Docs. 17 and 137, respectively); and an April 11, 2014 email from Yu to Minnie Rose asking for payment on six invoices because "their shipment [was] already released to Minnie Rose" (Doc. 17 at 12).

"To recover on a claim for goods sold and delivered, a [claimant] must show that: (1) it had a contract with the buyer; (2) the buyer failed to pay the purchase price; and (3) the buyer accepted the goods."  *H.Daya Int'l Co.*, 348 F. Supp. 3d at 309.  Defendants' evidence establishes none of those factors.  Even if the 99 invoices are considered merchant contracts under the UCC, Defendants did not submit those invoices to the Court—only a summary excel sheet, the accuracy of which Plaintiffs dispute (*see* Doc.

---

[8] Defendants mistakenly assert that the list contains "approximately 121 invoices."  Doc. 138 at 7.

[9] July 22, 2023 is the date the affidavit was filed with the Court, but the affidavit itself is undated.

140 at 10–11).  Nor did they submit any evidence of the amount of Plaintiffs' payments, if any, or any evidence proving that the goods covered by the contract were ever accepted by Plaintiffs.  The closest Defendants come to submitting relevant evidence are the two sentences of Yu's affirmation that they quoted in their reply papers:  "[] Minnie Rose placed the orders and goods shipped, the FOB invoices were accepted and no complaints were made to the invoices.  However, they were not paid for as agreed."  Doc. 137 ¶ 7. That is not enough to satisfy Defendants' burden to demonstrate the absence of any genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323.

Even if Defendants had satisfied their burden, however, and the burden shifted to Plaintiffs to submit "admissible evidence sufficient to raise a genuine issue of fact," Plaintiffs satisfied that burden.  *See Saenger*, 706 F. Supp. 2d at 504.  Plaintiffs contend Defendants' invoices were artificially inflated and submit an invoice-by-invoice comparison of the amounts the factories charged Defendants, as compared to what Defendants sought to charge Plaintiffs.  Doc. 140 at 9 (citing Doc. 139 and exhibits thereto).  Accordingly, Plaintiffs have "set forth significant, probative evidence on which a reasonable fact-finder could decide in [their] favor."  *See Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson*, 477 U.S. at 256–57).  Defendants' motion is therefore denied without prejudice.

## V.    DEFENDANTS' MOTION TO DISMISS IS DENIED

Finally, Defendants seek to dismiss Minnie Rose's "case for fraud,"[10] "motion for sanctions," and case (presumably in its entirety) for failure to state a claim and "as having been brought in bad faith."  Doc. 136 at 11–12.  Defendants make no arguments in support of such relief in their motion papers (Doc. 138), however, and simply state in the

---

[10] Presumably, Defendants refer to Minnie Rose's claims for fraudulent misrepresentation.

"Affirmation of Martin Mushkin" that "[f]raud claims carry a heavy burden of proof," but Defendants committed no fraud (Doc. 136 ¶ 25).[11]

On reply, Defendants further assert—but only in conclusory fashion—that "this entire lawsuit was spawned as the result of Plaintiffs' scheme to cut Ms. Yu and Elva Green out of their position between Minnie Rose and manufacturers . . . [and Plaintiffs] brought suit to conduct a fishing expedition into the identity of the manufacturers at issue." Doc. 143 at 3.  Accordingly, Defendants argue that dismissal is the "appropriate remedy where 'there is a showing of willfulness, bad faith, or fault.'"  *Id.* at 2 (quoting *Sarovia v. Royal Guard Fence Co.*, No. 19-cv-2086 (DRH), 2020 U.S. Dist. LEXIS 160506, at *14 (E.D.N.Y. Sep. 2, 2020)).  They further contend that Plaintiffs cannot establish a prima facie claim for common law fraud because "Plaintiffs have set forth no evidence that Defendants omitted or misrepresented material facts or intended to defraud Plaintiffs." *Id.* at 4.  Likewise, Plaintiffs failed to establish a prima facie claim for unjust enrichment because Defendants were not enriched by the alleged additional charges, nor were those charges at Plaintiffs' expense, and it would be unjust for Plaintiffs to recover; additionally, where an express contract exists between the parties, unjust enrichment is inappropriate.  *Id.* at 6–7.

Plaintiffs argue that, as the Court already rejected Defendants' arguments when deciding the prior motion to dismiss and Defendants did not move for reconsideration, the doctrine of the law of the case requires the Court to adhere to its prior decision.  Doc. 140 at 6.  No intervening change of law, new evidence, or manifest injustice exists such that the Court need change its prior Opinion.  *Id.* at 6–7.

### A.  Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges that a complaint fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[11] Although Defendants do not specify pursuant to which Rule they bring the motion to dismiss, the Court interprets Defendants as arguing that Plaintiffs failed to state a claim pursuant to Rule 12(b)(6).

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To succeed on a motion to dismiss, a defendant must make more than a merely "cursory and conclusory" argument that a claim is insufficiently pled and must be dismissed.  *F.C. v. N.Y.C. Dep't of Educ.*, No. 15-cv-6045 (PAE), 2016 2016 U.S. Dist. LEXIS 103476, at *56 n.16 (S.D.N.Y. Aug. 5, 2016).  Thus, where a defendant "do[es] not explain the deficiencies with [a] plaintiff's pleadings, the Court will not dismiss the claim." *Id.*  Moreover, these arguments must be raised in a defendant's moving papers, not merely on reply, as arguments raised for the first time on reply are not appropriately before the Court.  *See MFW Assocs., LLC v. Plausteiner*, No. 15-cv-2513 (PAE), 2016 U.S. Dist. LEXIS 56151, at *2 n.2 (S.D.N.Y. Apr. 27, 2016) ("[N]ew arguments may not be made in a reply brief." (quoting *DSND Subsea AS v. Oceanografia, S.A. de CV*, 569 F. Supp. 2d 339, 347 (S.D.N.Y. 2008))).

### B. Discussion

The Court denies Defendants' motion for several reasons.  First, as Plaintiffs correctly point out, the Court has already rejected the identical arguments seven years ago in denying Defendants' first motion to dismiss.  Doc. 18 at 16–25.  That decision is now the law of the case.  *See Colvin*, 900 F.3d at 67–68.  And it is *far* too late to now move for reconsideration.  *See* S.D.N.Y. Local Civ. R. 6.3 (requiring motions for reconsideration be filed within fourteen days after the entry of the Court's decision).

Even if these were new arguments that had not already been rejected, however, motions to dismiss for failure to state a claim may not be filed after *years* of discovery. *See Jones v. H.H.C. Inc.*, No. 00-cv-6512 (DAB) (FM), 2003 U.S. Dist. LEXIS 6510, at *7 n.4 (S.D.N.Y. Apr. 8, 2003) (R&R) ("A motion to dismiss for failure to state a claim . . . is often filed before the answer is due and, hence, before any discovery takes place." (citing Fed. R. Civ. P. 12(b), (c))); *Richardson Greenshields Sec., Inc. v. Lau*, 819 F. Supp. 1246, 1270 (S.D.N.Y. 1993) ("Motions to dismiss should be made at the appropriate time, not at the close of almost 8 years of litigation.").

Additionally, Defendants' only argument in their moving papers is a conclusory statement by counsel that fraud claims carry a heavy burden of proof, and Defendants committed no fraud. *See* Doc. 136 ¶ 25; Doc. 138. Defendants' failure to "explain the deficiencies with [Minnie Rose's] pleadings" are fatal. *See F.C.*, 2016 2016 U.S. Dist. LEXIS 103476, at *56 n.16. And their more fulsome arguments in reply cannot save them. *See MFW Assocs., LLC*, 2016 U.S. Dist. LEXIS 56151, at *2 n.2.

But, even if the Court *were* to consider the arguments Defendants raise only on reply and overlook their tardiness, Defendants *nonetheless* fail to raise any tenable argument for dismissal. First, the full sentence from *Saravia* that Defendants partially quote for the proposition that cases brought in bad faith should be dismissed (Doc. 143 at 2) actually reads: "Moreover, in issuing sanctions under the Court's inherent power, dismissal or default may be an appropriate remedy where there is a showing of willfulness, bad faith, or fault." 2020 U.S. Dist. LEXIS 160506, at *14 (internal quotation marks omitted). In other words, *Saravia* concerned Rule 11 sanctions, not a motion to dismiss. *Id.* Defendants have not moved for Rule 11 sanctions. *Saravia* is thus patently inappropriate. Second, to survive a motion to dismiss, it is more than enough to "set forth nothing but mere allegations," unsubstantiated by any evidence. *Contra* Doc. 143 at 5–7. Indeed, the very purpose of a motion to dismiss is to "to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted); *see also Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (holding that the question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims" (citation omitted)). Accordingly, Defendants' arguments

for dismissal are without merit.  The Court will not dismiss the complaint in its entirety, nor will it dismiss merely the fraudulent misrepresentation claim.[12]

## VI.   CONCLUSION

For the reasons stated above, Plaintiffs' motion is GRANTED in part and DENIED in part, and Defendants' motion is DENIED.  Specifically, Plaintiffs request to preclude Defendants from now deposing Shaller Goldberg is granted, but the balance of both parties' motions (for sanctions, dismissal, and summary judgment) is denied.

The parties are directed to appear for a conference on December 7, 2023 at 11 AM before the Honorable Edgardo Ramos in Courtroom 619 of the United States Courthouse, 40 Foley Square, New York, NY 10007.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 127 and 135.[13]


It is SO ORDERED.


Dated:    November 8, 2023
          New York, New York

_____

EDGARDO RAMOS, U.S.D.J.

---

[12] And the Court already denied Plaintiffs' motion for sanctions, as noted above, so the Court need not "dismiss" the motion.

[13] To the extent that Defendants sought oral argument on their motions by notation in the caption (*see* Doc. 135), that request is denied as moot.