UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MINNIE ROSE LLC,

                 Plaintiff,

– against –

ANNA YU, *a/k/a* ANNA YUE, ELVA GREEN CLOTHING COMPANY LTD *a/k/a* ELVA GREEN CLOTHING (HK) CO., LTD., *and* JOHN DOES 1-10,

                 Defendants.

ELVA GREEN CLOTHING (HK) CO., LTD., *a/k/a* ELVA GREEN CLOTHING COMPANY LTD ("ELVA GREEN"),

                 Third-Party Plaintiff,

– against –

LISA SHALLER GOLDBERG *and* JOHN DOES 1-10,

                 Third-Party Defendants.

**OPINION & ORDER**

15-cv-01923 (ER)

RAMOS, D.J.:

    Before the Court is the motion of defendants Anna Yu and Elva Green Clothing Company Ltd., a/k/a Elva Green Clothing (HK) Co., Ltd. ("Defendants") pursuant to Federal Rule of Civil Procedure 60(b)(1) to vacate default judgment entered against Defendant Yu. For the reasons set forth below, Defendants' motion is GRANTED.

**I.    BACKGROUND**

    On March 13, 2015, Minnie Rose LLC ("Minnie Rose") filed this action for fraudulent misrepresentation and unjust enrichment against Anna Yu ("Yu"), her closely held corporation Elva Green Clothing Company Ltd. ("Elva Green"), and several unnamed parties ("John Does 1-10") for transactions that occurred from 2009 to 2014.

Doc. 1.  Minnie Rose alleges that for the entirety of its business relationship with Defendants, it was systematically defrauded through the creation of artificial invoices which inflated manufacturing costs and requested reimbursement for out-of-pocket deposits that in reality were never incurred by Defendants.  *See id*. ¶¶ 1–3.

Minnie Rose is a New York limited liability corporation that designs, manufactures, and sells contemporary women's clothing.  Doc. 1 ¶ 1.  After engaging Yu's services in 2009, Elva Green became Minnie Rose's primary sourcing agent in China.  *Id.* ¶ 2.  In that capacity, Defendants were responsible for selecting and supervising the factories in China that would manufacture Minnie Rose's garments, negotiating prices, and coordinating payment of the factories' invoices.  *Id.*  As compensation for their services, Defendants received a commission equal to 10% of the Free on Board ("FOB") cost of each item produced and shipped to Minnie Rose, though this agreement was never reduced to writing.  Doc. 9.  Over the course of the six year relationship, Defendants arranged for monthly shipments to be made to Minnie Rose and submitted the corresponding invoices.  Doc. 13.

Minnie Rose alleges that in the Summer of 2014, it learned that Defendants had engaged in fraud by altering factory invoices to inflate the prices of each garment and pocketing the difference.  Doc. 1 ¶¶ 3–4.  In doing so, Defendants also artificially inflated the commission charged to Minnie Rose.  *Id.* ¶ 4.  Additionally, Minnie Rose alleges that Defendants altered the payment instructions on invoices sent by the Tonglu Gaili Garment Co. Ltd. Factory (the "Tonglu Factory") to direct Minnie Rose to make payments to a bank account controlled by Defendants under the name of "MASA Co." (the "MASA Account") rather than an account controlled by the Tonglu Factory.  *Id.* ¶ 19.  Minnie Rose also alleges that Defendants fraudulently represented that they were required to make out-of-pocket payments up front to the Shanghai Dongfang Wool Knitting Co., Ltd. Factory (the "Shanghai Factory") for various supplies, for which Defendants then demanded reimbursement.  *Id.* ¶ 21.  According to Minnie Rose,

Defendants never made any such up-front payments and instead kept the purported reimbursement payments. *Id.*

From 2015 to 2024, the parties engaged in extensive discovery and motion practice. Doc. 181. Defendants were represented by Martin Mushkin, Esq. during this period. Doc. 184. From 2018 onwards, Minnie Rose was represented by Michael James Maloney. Doc. 181.

At a status conference on December 7, 2023, the Court confirmed that the case was ready for trial and set the date for June 24, 2024. Doc. 184 at 5. Appearing by telephone, Mr. Mushkin stated that he would not personally be trying the case because he was not in good health, describing himself as "semiretired." Doc. 181 at 4. Defendant Yu attended the December conference virtually, though she states that her limited proficiency in English prevented her from understanding the Court's discussion of the June trial date as well as its directive that she obtain new counsel. Doc. 182; Doc. 184. Mr. Mushkin made one last call to Defendant Yu on January 2, 2024, regarding merchant invoices and price quotations related to the defense before becoming unavailable to his client without explanation. Doc. 182 ¶¶ 12–13. Thereafter, Defendant Yu's attempts to reach Mr. Mushkin by email on November 27, 2024, and January 1, 2025, went unanswered. *Id.* ¶ 13.

According to letters filed with the Court by Maloney, Minnie Rose's counsel, Mushkin had informed Maloney over the phone on multiple occasions that Mushkin planned to withdraw from the case due to his advanced age and intent to retire. Doc. 181 at 4. Maloney further noted that Mushkin exhibited signs of mental decline. *Id.* Despite Mushkin's statements, he did not file a motion to withdraw and, according to Defendant Yu, did not inform her of his deteriorating condition. *Id.* In an order dated April 12, 2024, the Court directed Defendants to provide contact information for their new trial counsel by April 19, 2024, though Defendants failed to do so. Doc. 184 at 6.

As the June 2024 trial date approached, Minnie Rose expressed concern about Defendants' trial representation after Defendants' counsel failed to respond to a draft Joint Proposed Pretrial Order. *Id.* The Court therefore issued an order on May 7, 2024, directing Defendants to have trial counsel enter an appearance by June 6, 2024, or risk default. Doc. 181 at 4. Minnie Rose served this order by email to Defendant Yu's email address with a copy to Mushkin, as well as by overnight mail to Defendants' last known address. *Id.* However, the Defendants had changed their address in January 2024, and did not receive service of the order papers. *Id.* at 5. Defendants' nonreceipt is supported by mailroom records of Yu's previous address which indicate that after the order could not be delivered, it was held by the building manager for several months before eventually being returned to the mail carrier. *Id.* Defendant Yu likewise states that she did not receive emails containing the order from Minnie Rose, despite maintaining that she monitors her inbox regularly. *Id.* Despite Minnie Rose's submission of electronic receipts indicating that the emails were successfully delivered to Yu's email address, Yu maintains that she searched her inbox and spam folders after being notified of the default judgment entered against her and was still unable to find Minnie Rose's communications. Doc. 184 at 6; Doc. 181 at 5.

On June 11, 2024, the Court issued an Order to Show Cause scheduling a hearing for June 20, 2024, to address potential default judgment. Doc. 181 at 5. Communications were once again sent to Yu through her email address, which she states were not received, and to Mushkin by ECF. *Id.* Neither Defendants nor their counsel appeared at this hearing, and Mr. Maloney informed the Court that Mushkin was residing in an assisted living facility and had requested a thirty-day extension. *Id.* at 6. Defendants again state that they were unaware of these developments. *Id.* The Court again ordered Defendants to appear by July 1, 2024, warning that failure to do so would result in default. *Id.* The Court ordered service to be sent to Yu's email address with a copy sent to Mushkin, as well as overnight mail to Defendants' address on file. *Id.*

4

Minnie Rose filed proof of service on June 25, 2024, though Defendants claim that they neither received these communications nor were informed of case developments by Mushkin. Doc. 181 at 6.

When Defendants failed to comply with the July deadline, this Court entered a default judgment in the amount of $1,327,500.71, plus prejudgment interest and costs, on July 15, 2024. *Id*. All of Defendants' counterclaims and third-party claims were dismissed with prejudice. *Id*. On August 1, 2024, an amended judgment was subsequently entered increasing the total to $1,983,435.01. *Id*.

After not hearing from Mushkin for eleven months, Defendant Yu attempted to contact him via email on November 27, 2024, and again on January 1, 2025, but received no response. Doc. 181 at 6. Yu first became aware of the amended default judgment on February 3, 2025, upon receiving two statutory demand letters from Mason Ching & Associates, Hong Kong-based counsel retained by Minnie Rose to secure the judgment. Doc. 181 at 6; Doc. 184 at 17. Upon receiving the demand letters, Defendant Yu retained counsel to defend her in these proceedings. Doc. 181 at 6.

On July 29, 2025, having retained counsel, Yu filed a motion for vacatur of default judgment pursuant to Rule 60(b)(1). Doc. 181. Yu contends that the fact that she did not receive notice of trial proceedings constitutes excusable neglect on account of her attorney's abandonment of the case and change of business address. Doc. 185. Yu additionally cites her active participation in the litigation of this matter for nearly a decade and asserted counterclaims totaling $1.7 million for breach of contract, unjust enrichment, and fraudulent conveyance. *Id*.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) provides that "for good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Defendants move to set aside the default judgment on the ground that the judgment had occurred as a result of

"inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Motions pursuant to Rule 60(b) appeal to the sound discretion of the district court. *Mendell in Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990), *aff'd sub nom.*, *Gollust v. Mendell*, 501 U.S. 115 (1991). On a motion to set aside a default judgment, doubts should be resolved in favor of the party seeking relief. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

### III.   DISCUSSION

#### A.  Good Cause

In determining whether there exists "good cause" to vacate a default judgment, courts consider: (1) whether the default was willful, (2) whether setting it aside would prejudice the adversary, and (3) whether a meritorious defense is presented. *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir. 1994) (marks and citations omitted). The Second Circuit has often expressed its preference for disputes to be resolved on the merits, generally disfavoring default judgments where adjudication is possible and imposing such judgments only in rare instances. *Enron Oil Corp.*, 10 F.3d at 95. The "good cause" standard is therefore construed generously, meaning that where "doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id.* at 96; *see Arana v. Polaris Cleaners 99 Inc.*, No. 20 Civ. 1143 (ER), 2023 WL 2242044, at *2 (S.D.N.Y. Feb. 27, 2023).

*1.  Willfulness*

Minnie Rose's primary contention here is that Defendant Yu acted willfully in failing to appoint new counsel after the disappearance of Mushkin. Where a client's attorney has failed to engage in pretrial proceedings, the Second Circuit has considered whether the attorney's conduct was the result of a shortcoming more culpable than negligence or even gross negligence, and whether that shortcoming can be properly attributed to their client. *See S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998); *see also Durso v. Modern Food Center, Inc.*, No. 17 Civ. 7324 (LAK) (GWG), 2019 WL

6

2150424, at *9 (S.D.N.Y. May 17, 2019). The Second Circuit also considers whether the defendant received actual notice of the default proceedings. *Enron Oil Corp.*, 10 F.3d at 98.

In the context of a default, the Second Circuit has interpreted "willfulness" to mean "more than merely negligent or careless." *McNulty*, 137 F.3d at 738. However, the degree of negligence present remains a factor to be considered. *See American Alliance Insurance Co. v. Eagle Insurance Co.*, 92 F.3d 57, 60 (2d Cir. 1996). For example, the court may find willfulness where "the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *McNulty*, 137 F.3d at 739. Defaults have therefore been found willful where an attorney failed to answer a complaint after defendants had "purposefully evaded service for months," failed to appear for a scheduled pretrial conference and unaccountably delayed more than ten months before moving to vacate the resulting default, or where a newly appointed attorney failed to file a notice of appearance due to "unspecified health issues." *Commercial Bank of Kuwait*, 15 F.3d at 243-44; *see Dominguez v. United States*, 583 F.2d 615, 618 (2d Cir. 1978); *Yuan-Leung v. Orsyn Land Services, Inc.*, 334 F.R.D. 64, 66 (S.D.N.Y. 2020). While illness or disability alone does not prevent a finding of willfulness, courts will occasionally find excusable neglect where extraordinary circumstances exist such as "sudden, unexpected, or catastrophic illness." *Lehr Construction Corp. v. Flaxer*, No. 16 Civ. 4048 (AJN), 2017 WL 464428, at *4 (S.D.N.Y. Feb. 2, 2017).

Here, Yu acknowledges that she was aware of Mushkin's comment during the December 2023 virtual conference that he was considering retirement. Doc. 182. However, Yu emphasizes that during a call made to her by Mushkin in January 2024, which was her last conversation with him before his abandonment of the case, he said nothing about the June 2024 trial date or his intent to withdraw. *Id.* In fact, Mushkin requested documents from her related to the defense including merchant invoices and price quotations. *Id.* Yu therefore asserts that she had reason to believe that Mushkin

7

intended to continue as her legal counsel, and that in keeping with the history of their correspondence she awaited him to contact her regarding next steps. *Id.* Yu separately argues that evasion of the judgment would be against her interests in light of her asserted counterclaims. Doc. 181.

The record before the Court lacks any suggestion that Defendants engaged in the sort of deliberately evasive conduct required for a finding of willfulness. *See FedEx TechConnect, Inc. v. OTI Inc.*, No. 12 Civ. 1674 (RJS), 2013 WL 5405699, at *8 (S.D.N.Y. Sept. 23, 2023). Despite Minnie Rose's contention that Mushkin's absence was not satisfactorily explained, Mr. Mushkin did advise the Court that as a result of his advanced age he would not be able to try the case, and his abandonment therefore can be appropriately attributed to age related health complications which were sufficiently "sudden" in nature to result in his admission to an assisted living facility. *Lehr Construction Corp.*, 2017 WL 464428, at *4. While Yu's failure to contact Mushkin for eleven months after their January 2024 call undoubtedly constitutes negligence, without "more," this inattentiveness fails to satisfy the high standard of willfulness. *McNulty*, 137 F.3d at 738.

Furthermore, assuming that Yu did not receive the Court's order to have counsel enter a pretrial appearance or notice of the impending default, there can be no willfulness in her failure to act. Yu provides correspondence between herself and the mail carrier confirming that the notices were returned to the mail carrier after being held by the building manager of her previous address for several months. Doc. 182. Similarly, with respect to the emails, while Minnie Rose questions the veracity of Yu's claims that she never received such notices, the two emails that Defendant sent to Mushkin in November 2024 and January 2025 suggest both her lack of awareness of Mushkin's condition and her intent to continue litigating the case. Doc. 184. Because doubt exists as to whether the Defendants received proper notice of the Court's orders and warnings of the

impending default, this factor counsels in favor of vacatur. *See Crawford v. Nails on 7th By Jenny, Inc.*, No. 18 Civ. 9849 (ER), 2020 WL 564059, at *2 (S.D.N.Y. Feb. 5, 2020).

    2. *Prejudice to Minnie Rose LLC*

Prejudice to the plaintiff due to vacatur of default judgment cannot be established by mere delay or passage of time. *See Davis v. Musler*, 713 F.3d 907, 915 (2d Cir. 1983). Instead, a plaintiff may demonstrate prejudice by showing that further delay of the judgment's enforcement would result in certain consequences such as "loss of evidence, [] increased difficulties of discovery, [or] provide greater opportunity for fraud." *Id.* The risk of prejudice is also present where vacatur would hinder plaintiff's ability to secure recovery or where the plaintiff is no longer able to pursue the claim. *See New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005); *see also Brown v. Gabbidon*, No. 06 Civ. 8148 (HB), 2007 WL, at *3 (S.D.N.Y. May 14, 2007).

Here, Minnie Rose contends that it will be prejudiced by a vacatur because Yu has failed to preserve relevant evidence including the original factory invoices from both the Tonglu and Shanghai factories as well as the bank records for the MASA Account. *See* Doc. 128-3 at 148:15-19. This argument, however, is unpersuasive. At the time of default judgment discovery was completed and the case was on the cusp of trial. Consequently, both parties had already exchanged records, and any issues concerning the production of relevant documents from Defendants arose before the entry of default judgment. Doc. 184. Vacatur would therefore not result in the loss of any additional evidence. *Id*.

Additionally, Minnie Rose states that further delay would thwart its recovery in part due to the increased likelihood that Defendants will attempt to avoid payment for additional costs such as accrued interest. Doc. 184. This argument is typically reserved for defendants who are in financial distress or on the brink of insolvency, but Minnie Rose makes no allegation that Elva Green will be unable to satisfy a judgment if vacatur further delays enforcement. Minnie Rose otherwise offers no details regarding how

9

continuing litigation would thwart its recovery. Consequently, this factor weighs in favor of vacatur.

Finally, Minnie Rose argues that it will be prejudiced by a vacatur because it has substantially relied upon the default judgment by retaining the services of Hong Kong-based legal counsel, Mason Ching & Associates, for which additional attorneys' fees have been incurred. However, "costs and legal fees in pursuing a default judgment, as well as the costs incurred with respect to countering a defendant's motion to vacate, do not constitute prejudice." *Hernandez v. La Cazuela de Mari Restaurant, Inc.*, 538 F.Supp.2d 528, 534 (E.D.N.Y. 2007). Because it does not support its claim that its ability to litigate would be hindered by vacatur, Minnie Rose fails to demonstrate prejudice.

Accordingly, taking into consideration the strong preference in favor of deciding cases on the merits, the Court finds the record insufficient to conclude that Minnie Rose would be prejudiced by granting the 60(b)(1) motion. *Green*, 420 F.3d at 110.

### 3. Merits of Defense

In order to make a sufficient showing of a meritorious defense, a defendant need not prove the defense conclusively at the motion stage. *See McNulty*, 137 F.3d at 740; *see also American Alliance Insurance Co.*, 92 F.3d at 61. Rather, the defendant need only present facts that if proven at trial would constitute a complete defense. *Enron Oil Corp.*, 10 F.3d at 98; *see also State Street & Trust Company v. Inversiones Errazuriz Limitada*, 374 F.3d 57. The requisite threshold to satisfy this factor is therefore quite low. *Durso*, 2019 WL 2150424, at *9. However, the defendant must present more than mere "conclusory denials" in attempting to establish the existence of a meritorious defense. *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001); *see FedEx TechConnect*, 2013 WL 5405699, at *8.

Here, Defendants deny intentional wrongdoing in their answer and suggest in later testimony that any discrepancies across factory invoices are the result of clerical mistakes by employees. Doc. 184. Specifically, Yu stated "we have so many invoices to deal with.

10

Sometimes colleagues may have copy and paste [*sic*] and forgot to verify and correct it." Doc. 128-3 at 76. While mere assertions are usually not alone sufficient to establish a meritorious defense, the fraudulent misrepresentation claim against Defendants will turn, in part, on Yu's credibility that she had no knowledge of the alleged fraud or intent to deceive. Regardless of whether this evidence will be sufficient to carry the day, it remains material to the defense of her case and presents a triable issue of fact. *See FedEx TechConnect, Inc.*, 2013 WL 5405699, at *8 (stating that a defendant must "articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations." (quoting *Davis*, 713 F.3d at 915)).

Accordingly, at this juncture, Defendants have established that they have a meritorious defense, the validity of which will be tested at trial.

\* \* \*

In sum, Defendants have sufficiently established that their default was not willful, that Minnie Rose will not be prejudiced by vacatur, and that they have an arguably meritorious defense.

### B. Timeliness

Rule 60(b) provides that a court may relieve a party from final judgment for six reasons specified in Rule 60(b). Rule 60(b)(1) permits the court to vacate default judgment in circumstances of "mistake, inadvertence, surprise, or excusable neglect." Rule 60(c)(1) imposes a one-year limitations period on 60(b) motions made pursuant to sections (1) through (3).

Yu's motion requests vacatur pursuant to Rule 60(b)(1), which carries the corresponding limitations period of one year. Fed. R. Civ. P. 60(c)(1). The Defendant filed her motion on July 29, 2025, narrowly within one year of the Court's entry of the amended default judgment on August 1, 2024. Doc. 180. Therefore, her motion is timely.

11

**IV.    CONCLUSION**

For the foregoing reasons, Elva Green's motion to reopen this action and vacate default judgment is GRANTED. The parties are directed to appear for a conference on November 18, 2025 at 11:00 a.m., in Courtroom 619 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007. The Clerk of Court is respectfully directed to terminate the motion, Doc. 180.

It is SO ORDERED.

Dated:    November 4, 2025
         New York, New York

                                    _____
                                    EDGARDO RAMOS, U.S.D.J.